# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.   1:15-cv-00841

United States of America, and
the State of Colorado,

                  Plaintiffs

     v.

Noble Energy, Inc.

            Defendant.

---

**CONSENT DECREE**

---

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 6 |
| II. | APPLICABILITY | 6 |
| III. | DEFINITIONS | 7 |
| IV. | INJUNCTIVE RELIEF | 14 |
| V. | PERMITS | 36 |
| VI. | ENVIRONMENTAL MITIGATION PROJECTS | 36 |
| VII. | CIVIL PENALTY | 38 |
| VIII. | SUPPLEMENTAL ENVIRONMENTAL PROJECTS | 40 |
| IX. | STATE-ONLY SUPPLEMENTAL ENVIRONMENTAL PROJECTS | 48 |
| X. | PERIODIC REPORTING | 50 |
| XI. | STIPULATED PENALTIES | 56 |
| XII. | FORCE MAJEURE | 63 |
| XIII. | DISPUTE RESOLUTION | 66 |
| XIV. | INFORMATION COLLECTION AND RETENTION | 67 |
| XV. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 69 |
| XVI. | COSTS | 73 |
| XVII. | NOTICES | 74 |
| XVIII. | SALES OR TRANSFERS OF OWNERSHIP OR OPERATIONAL INTERESTS | 75 |
| XIX. | EFFECTIVE DATE | 78 |
| XX. | RETENTION OF JURISDICTION | 78 |
| XXI. | MODIFICATION | 78 |
| XXII. | TERMINATION | 79 |
| XXIII. | PUBLIC PARTICIPATION | 81 |
| XXIV. | SIGNATORIES/SERVICE | 81 |
| XXV. | INTEGRATION/HEADINGS | 82 |
| XXVI. | FINAL JUDGMENT | 82 |
| XXVII. | APPENDICES | 82 |

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff State of Colorado, on behalf of the Colorado Department of Public Health and Environment ("CDPHE"), are filing a Complaint concurrently with the lodging of this Consent Decree, pursuant to Section 113(b) of the Clean Air Act ("Act"), 42 U.S.C. § 7413(b), and Sections 121 and 122 of the Colorado Air Pollution Prevention and Control Act (the "Colorado Act"), C.R.S. §§ 25-7-121 and 122.  The Complaint alleges that Defendant, Noble Energy, Inc. ("Noble") violated requirements of the Act and Colorado's federally approved State Implementation Plan ("SIP"), specifically Colorado Air Quality Control Commission Regulation Number 7 ("Reg. 7"),[1] at Condensate tanks that are part of Noble's natural gas production system in the Denver-Julesburg ("D-J") Basin.  The Condensate tanks covered by this Decree are all within the Non-Attainment Area;

WHEREAS, the Condensate tanks store hydrocarbon liquids known as "Condensate" prior to transport and sale.  Condensate is separated from natural gas near the well-head in a device known as a "Separator."  After reaching pre-set levels in the Separator, the Condensate, also known as "Pressurized Liquids," is emptied in batches into storage tanks kept at or near atmospheric pressure.  As Condensate is "dumped" (the term commonly used within the industry) into storage tanks, the pressure decreases and vapors, which include volatile organic compounds ("VOCs") and other air pollutants, are released or "flashed" into a gaseous state.  Such vapors are known as "flash gas."  Additional vapors are released from the Condensate due to temperature fluctuations and liquid level changes.  These are known as "working,"

---

[1] Reg. 7 has been periodically revised over time.  The latest SIP-Approved version of Reg. 7 was approved by EPA on February 13, 2008 with an effective date of April 14, 2008.  *See* 73 Fed. Reg. 8,194 (Feb. 13, 2008).  Since then, the State has revised Reg. 7 several times.  For clarity and completeness sake, where appropriate, the Consent Decree will cite both versions, designated as "SIP-Approved Reg. 7" and "State-Approved Reg. 7."

"breathing," and "standing" losses;

WHEREAS, the Condensate tanks that are subject to this Decree are equipped with systems to route vapors from the Condensate tanks by vent lines to emission control devices known as combustors or vapor recovery units ("VRU");

WHEREAS, the Condensate tanks that are subject to this Decree are subject to certain requirements of Reg. 7, including the general requirements that: "all condensate collection, storage, processing and handling operations, regardless of size, shall be designed, operated, and maintained so as to minimize leakage of VOCs to the atmosphere to the maximum extent practicable" (SIP-Approved Reg. 7, Sec. XII.D.2.b and State-Approved Reg. 7, Sec. XII.C.1.b); and "all such air pollution control equipment shall be adequately designed and sized . . . to handle reasonably foreseeable fluctuations in emissions of [VOCs]. Fluctuations in emissions that occur when the separator dumps into the tank are reasonably foreseeable." SIP-Approved Reg. 7, Sec. XII.D.2.a and State-Only Reg. 7, Sec. XII.C.1.a;

WHEREAS, increases to third-party gas sales line pressures could result in wells being operated at higher pressures so that gas can be routed into the sales line. This increased pressure can result in liquids being dumped at higher pressure into Condensate tanks with greater potential flashing losses. These increased flashing losses would then require greater capacity of the vent lines to route all vapors to emission control devices. Noble represents that with increased production in the D-J Basin, gas sales line pressures have increased significantly in a manner that Noble claims was not reasonably foreseeable at the time the air pollution control equipment was installed;

WHEREAS, the Complaint alleges that in January and February 2012, inspectors from EPA and the CDPHE's Air Pollution Control Division inspected 99 groups of one or more

2

Condensate tanks with a unique AIRS identification number ("AIRS Tanks"), and using optical gas-imaging infrared cameras observed that many of the AIRS Tanks were emitting VOCs to the atmosphere at the time of the inspection.  In some instances, the inspectors had complementary sensory observations of VOC emissions, including hydrocarbon odor, audio observations of hissing, observations of visible wave refractions, and observed hydrocarbon stains on the Condensate tanks emanating from pressure relief valves ("PRVs") and thief hatches, interpreted by EPA and CDPHE as possible indications of past VOC emissions.  The inspectors observed VOC emissions, or alleged signs of VOC emissions, at many of the AIRS Tanks inspected. During their inspections of the 99 AIRS Tanks the inspectors also observed open thief hatches and no visible signage listing identification numbers (known as AIRS Identification Numbers ("AIRS ID")) on some of the Condensate tanks and no visible signage on a few combustors indicating which Condensate tanks were being controlled by which emission control devices;

WHEREAS, Noble representatives were not present during the EPA and CDPHE inspections, were not notified of the outcome of the inspections until July 2014, and at this time cannot confirm the accuracy of all of the EPA and CDPHE observations and conclusions;

WHEREAS, in response to an August 2013 request for information by EPA pursuant to Section 114 of the Act, 42 U.S.C. § 7414, Noble provided extensive data to EPA and CDPHE regarding the inspected AIRS Tanks.  The data includes detailed analyses of samples of Pressurized Liquids taken at the inspected AIRS Tanks and associated production data, as well as detailed information about the vapor control systems at those AIRS Tanks.  Based upon an evaluation of this data, the United States and the State further allege in the Complaint that a number of the inspected AIRS Tanks are connected to vent lines that do not have sufficient capacity to route all the vapors from the Condensate tanks to combustion devices, resulting in the

3

potential for vapors to be emitted to the atmosphere from PRVs and/or thief hatches;

WHEREAS, in cooperative discussions between the Parties about the allegations discussed above, concerns were identified about the reliability of practices used in the oil and gas industry to sample and analyze Pressurized Liquids in order to accurately predict flash gas emissions, which resulted in a proposal for a scientific study to evaluate protocols for determining peak flashing losses from certain Noble Condensate tanks in the D-J Basin to assist with potential improvements to sampling and analysis of Pressurized Liquids in the oil and gas industry;

WHEREAS, Noble cooperated fully with EPA and CDPHE to provide information, develop new data, and address concerns associated with VOC emissions from Condensate tanks;

WHEREAS, before this action Noble committed extensive resources in (i) working cooperatively with the State and certain other stakeholders in developing the proposed 2014 Reg. 7 requirements, (ii) participating in the subsequent two-month long rulemaking process, and (iii) providing critical testimony and evidence during the three-day long Air Quality Control Commission hearing at which the 2014 Reg. 7 provisions were adopted.  These regulations are, in pertinent part, designed to reduce VOC emissions from Condensate tanks and are currently among the most stringent in the nation;

WHEREAS, between December 2014 and March 2015, Noble divested certain oil and natural gas wells and associated assets in the D-J Basin which included a subset of the inspected AIRS Tanks covered by EPA's request for information pursuant to Section 114 of the Act, 42 U.S.C. § 7414.  Prior to closing on the sale of these AIRS Tanks that were covered by EPA's Section 114 request for information, Noble conducted an evaluation and took corrective actions, as it deemed necessary, to assure that based on current operating conditions each AIRS Tank had

4

a vapor control system adequately sized to capture, convey, and control VOC emissions;

WHEREAS, Noble has been proactively and voluntarily eliminating or reducing potential VOC emissions from Condensate tanks in the D-J Basin. At its new oil and gas development operations where Noble uses central processing facilities, Noble has been designing and installing tank-less operations, thus eliminating the potential for VOC emissions from Condensate tanks. Where Condensate tanks continue to be used, Noble has been expanding installation and use of a vapor recovery tower ("VRT") where a low pressure Separator has been installed to provide multiple stages of separation of natural gas and liquids. Vapors from the VRT are then either routed to a combustor or to a VRU where the vapors are compressed and sent to the gas sales line. Either way, Noble has been able to reduce the amount of vapors emitted from Condensate tanks whenever thief hatches are opened for measurement loadout purposes, protecting both employees and the environment. At locations where Noble has installed VRUs, Noble has also been able to conserve, rather than combust, the flash emissions;

WHEREAS, Noble does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint; and

WHEREAS, the Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Decree is fair, reasonable, and in the public interest;   NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action and the Parties

pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 113(b) of the Act, 42 U.S.C. §

7413(b).  Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the

Complaint are alleged to have occurred in, and Noble conducts business in, this judicial district.

Noble consents to and shall not challenge entry of this Consent Decree or this Court's

jurisdiction to enter and enforce this Decree, and Noble further consents to venue in this judicial

district.  Except as expressly provided for herein, this Decree shall not create any rights in or

obligations of any party other than the Parties to this Decree.  Except as provided in Section

XXIII (Public Participation) of this Decree, the Parties consent to the entry of this Decree

without further notice.

2.      The State has actual notice of the commencement of this action in accordance

with the requirements of Section 113 of the Act, 42 U.S.C. § 7413.

## II.    APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United

States and the State, and upon Noble and any successors, assigns, or other entities or persons

otherwise bound by law.  Unless otherwise noted, the obligations of this Decree shall become

enforceable on its Effective Date as provided in Section XIX (Effective Date).

4.      Noble shall provide a copy of this Consent Decree to all officers, employees, and

agents whose duties might reasonably include compliance with any provision of this Decree, as

well as to any contractor retained after the Effective Date to perform work required under this

Decree. A contractor's failure to perform the work in conformity with the terms of this Decree shall not excuse Noble's obligations under this Decree.

5.　　In any action to enforce this Consent Decree, Noble shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Decree.

## III.　DEFINITIONS

6.　　For purposes of this Consent Decree, every term expressly defined by this Section shall have the meaning given that term herein. Every other term used in this Decree that is also defined in the Act, 42 U.S.C. § 7401 *et seq.*, in the regulations promulgated pursuant to the Act, or in the Colorado SIP (including Reg. 7 that was approved as part of the Colorado SIP effective on April 14, 2008, 73 Fed. Reg. 8194 (Feb. 13, 2008)), shall mean in this Decree what such term means under the Act, those regulations, or the Colorado SIP. In the case of a conflict between federal and state definitions, federal definitions shall control.

a.　　"Actual Uncontrolled Annual VOC Emissions" shall mean the amount of VOC emissions from a Tank System during the previous 12-month period based on actual production prior to the routing of those VOCs to an emissions control device.

b.　　"AIRS Tank" shall mean one or more tanks that store Condensate and have a unique AIRS identification number. The AIRS Tanks that are subject to this Decree are identified in columns two and three of Appendix A. Appendix A includes all AIRS Tanks that are listed on Noble's November 30, 2014 Reg. 7 Spreadsheet as being controlled, except those AIRS Tanks that were sold by Noble prior to the Date of Lodging.

7

c.   "Calendar Day" shall mean any of the seven days of the week.  In computing any period of time under this Decree expressed in Calendar Days (as opposed to days), where the last Calendar Day would fall on a Saturday, Sunday, or federal holiday, the period shall not be extended to the next business day.

d.   "CDPHE" shall mean the Colorado Department of Public Health and Environment, and its Air Pollution Control Division ("APCD").

e.   "Complaint" shall mean the complaint filed by the United States and the State in this action.

f.   "Condensate" shall mean hydrocarbon liquids that remain liquid at standard conditions (68 degrees Fahrenheit and 29.92 inches mercury) and are formed by condensation from, or produced with, natural gas, and which have an American Petroleum Institute gravity ("API gravity") of 40 degrees or greater.

g.   "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto listed in Section XXVII (Appendices).

h.   "Controlled Sale" shall mean a direct or indirect sale or transfer to a buyer or transferee of an ownership or operational interest in a Tank System(s) and/or associated well production asset(s) provided that Noble retains the ability, directly or indirectly, to direct or cause the direction of the management and policies of such buyer or transferee, whether through ownership of voting securities, by contract, or otherwise.

i.      "Date of Lodging" shall mean the date this Decree is filed for lodging with the Clerk of the Court for the United States District Court for the District of Colorado.

j.      "Day" or "day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, unless the time period is expressly stated to be in "Calendar Days" and not "days" or "business days," the period shall run until 11:59 p.m. Mountain Time of the next business day.

k.      "Defendant" shall mean Noble Energy, Inc.

l.      "Engineering Design Standard" shall mean an engineering standard developed by Noble pursuant to Paragraph 9 (Engineering Design Standard).

m.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

n.      "Effective Date" shall have the definition provided in Section XIX (Effective Date).

o.      "IR Camera Inspection" shall mean an inspection of a Vapor Control System using an optical gas imaging infrared camera designed for and capable of detecting hydrocarbon and VOC emissions, conducted by trained personnel who maintain proficiency through regular use of the optical gas imaging infrared camera.

p. "Malfunction" shall mean any sudden, infrequent, and not reasonably preventable failure of air pollution control equipment, process equipment, or a process to operate in a normal or usual manner.  Failures that are caused in part by poor maintenance or careless operation are not malfunctions.

q. "Modeling Guideline" shall mean the modeling guideline developed by Noble pursuant to Paragraph.8 (Development of a Modeling Guideline).

r. "Noble" shall mean Noble Energy, Inc., a Delaware corporation and the entity named as a defendant in the Complaint.

s. "Non-Attainment Area" shall mean the 8-hour Ozone Control Area within the meaning of SIP-Approved Reg. 7, Sec. I.A.1.d and State-Approved Reg. 7, Sec. II.A.1.

t. "Normal Operations" shall mean all periods of operation, excluding Malfunctions.  For storage tanks at well production facilities, normal operations includes, but is not limited to, liquid dumps from the Separator.

u. "Ozone Season" shall mean the calendar weeks including May 1 through September 30, as used in State-Approved Reg. 7, Sec. XII.F.4.h.

v. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

w. "Parties" shall mean the United States, the State, and Noble.

x. "Plaintiffs" shall mean the United States and the State.

y. "Potential Peak Instantaneous Vapor Flow Rate" shall mean the maximum instantaneous amount of vapors routed to a Vapor Control System during

Normal Operations, including flashing, working, breathing, and standing losses, as determined using the Modeling Guideline.

z. "Pressurized Liquids" shall mean hydrocarbon liquids separated from, condensed from, or produced with natural gas while still under pressure and upstream of the Condensate tanks servicing the well.

aa. "Project Dollars" shall mean Noble's expenditures and payments incurred or made in carrying out the Environmental Mitigation Projects identified in Appendix C to the extent that such expenditures or payments both: (a) comply with the requirements set forth in Section VI (Environmental Mitigation Projects) and Appendix C; and (b) constitute Noble's direct payments for such projects, or Noble's external costs (*e.g.*, for labor and equipment).

bb. "psi" shall mean pounds per square inch.

cc. "QA/QC" shall mean quality assurance and quality control.

dd. "Reg. 7 Spreadsheet" shall mean the spreadsheet listing AIRS Tanks, which Noble submitted to CDPHE on November 30, 2014 to comply with SIP-Approved Reg. 7 and State-Approved Reg. 7.  Nothing in this Decree shall be construed to require Noble to include an AIRS Tank listed on the November 30, 2014 submittal on any future spreadsheets submitted to CDPHE if not otherwise required to meet Reg. 7, Sec. XII system-wide requirements.

ee. "Reliable Information" shall mean any observance or detection of VOC emissions from a Tank System using an optical gas imaging infrared

11

camera, EPA Method 21 monitoring, CDPHE Approved Instrument Monitoring Method ("AIMM"), or audio, visual, olfactory ("AVO") inspections by EPA, CDPHE, or local government inspectors trained by CDPHE, Noble employees or Noble contractors trained to conduct inspections for emissions, or, in the case of the consultant selected by Noble to perform a third-party audit, VOC emissions detected or observed using an optical gas imaging infrared camera.  For purposes of this Decree only, evidence of past surface staining alone shall not be considered Reliable Information.

ff. "Section" shall mean a portion of this Decree identified by a Roman numeral.

gg. "Separator" shall mean a pressurized vessel used for separating a well stream into gaseous and liquid components.

hh. "State" shall mean the State of Colorado, acting on behalf of CDPHE.

ii. "Tank System" shall mean one or more tanks that store Condensate and share a common Vapor Control System.  The Tank Systems that are subject to this Decree are identified in column one of Appendix A.

jj. "Tank System Group" shall mean one of the groupings of Tank Systems as set forth in Paragraph 10.a (Vapor Control System Engineering Evaluation).

kk. "Three Line Pressure Groupings" shall mean the distribution of Tank Systems that are associated with Well Production Operations which produce gas into sales lines that, as of August 17, 2014, had line pressures

within the following three ranges:  (1) 233 psi or greater ("Group I"); (2) less than 233 psi and greater than or equal to 186 psi ("Group II"); and (3) less than 186 psi ("Group III").  If Noble later determines that another grouping of the Tank Systems is more appropriate, in consultation with EPA and CDPHE and subject to both agencies' prior written approval, the Tank Systems can be redistributed among Group I, Group II, and Group III.

ll.    "TPY" shall mean tons per year.

mm.    "United States" shall mean the United States of America, acting on behalf of EPA.

nn.    "Vapor Control System" shall mean the system used to contain, convey, and control vapors from Condensate (including flashing, working, breathing, and standing losses, as well as any natural gas carry-through to Condensate tanks) at a Tank System.  A Vapor Control System includes a Tank System, piping to convey vapors from a Tank System to a combustion device and/or vapor recovery unit, fittings, connectors, liquid knockout vessels or vapor control piping, openings on Condensate tanks (such as pressure relief valves ("PRVs") and thief hatches), and emission control devices.

oo.    "VCS Root Cause Analysis" shall mean an assessment conducted through a process of investigation to determine the primary cause and contributing cause(s), if any, of VOC emissions from a Vapor Control System.

pp.    "VOC" or "VOCs" shall mean volatile organic compounds.

qq.   "Well Production Operations" shall mean those surface operations to produce Condensate and natural gas from a well but shall not include maintenance activities (*e.g.*, swabbing).

### IV.   INJUNCTIVE RELIEF

7.   <u>Cross-Section Sampling Analysis</u>.  No later than May 1, 2015, Noble shall collect and analyze Pressurized Liquids samples from a cross-section of at least 100 Tank Systems in accordance with the Sampling and Analysis Plan ("SAP") attached as Appendix B.  Noble shall initially collect and analyze Pressurized Liquids samples from at least 33 Tank Systems within each of the Three Line Pressure Groupings.  Within each of the Three Line Pressure Groupings, Noble shall use its best efforts to evenly apportion the samples among volumetrically high, middle, and low producers of Condensate.

a.   Noble shall provide at least five business days advance notice to EPA and CDPHE of when field sampling events are scheduled to occur, unless such requirement is waived by EPA and CDPHE for a particular sampling event.

b.   Noble shall conduct a QA/QC assessment of the sampling data in accordance with the requirements of the SAP.

c.   Noble shall review the analytical results to determine if the samples obtained are representative for each of the Three Line Pressure Groupings for the purpose of developing the inputs to the Modeling Guideline to calculate the Potential Peak Instantaneous Vapor Flow Rate and, if not, Noble shall:  (i) obtain additional samples to achieve an adequate sampling for each such grouping; (ii) obtain site-specific data collected

14

and analyzed in accordance with the SAP for application of the Modeling
Guideline at a Tank System; or (iii) incorporate an engineering factor, as
appropriate, in the Modeling Guideline.  Noble shall complete the field
sampling and analysis of Pressurized Liquids in order to meet the
deadlines in Paragraph 10 (Vapor Control System Engineering
Evaluations).

8.     <u>Development of a Modeling Guideline</u>.  Noble shall develop a written modeling
guideline ("Modeling Guideline").  The purpose of the Modeling Guideline is to determine
Potential Peak Instantaneous Vapor Flow Rate for purposes of designing and adequately sizing
Vapor Control Systems and to provide procedures for achieving this objective.

    a.     The Modeling Guideline shall address the following, where relevant:

       (1)     Vapor sources (*e.g.*, atmospheric storage tanks and transfer and
loading systems) tied or to be tied into the Vapor Control System;

       (2)     The maximum operating pressure and associated temperature from
the last stage of separation prior to the Tank System to which the
Vapor Control System is certified for operation in accordance with
Paragraph 12 (Vapor Control System Verification);

       (3)     Vapor pressure of the final weathered product transported from the
Condensate tanks;

       (4)     The use of Pressurized Liquids sampling data from the Cross-
Section Sampling Analysis that reflects the highest potential for
flash gas emissions or site-specific data collected and analyzed in
accordance with the SAP;

(5) API gravity of the hydrocarbon liquids (including consideration of the variability of this parameter and the impact on the solution gas content of the hydrocarbon liquids at a given pressure);

(6) The maximum design flow rate across the Separator liquid dump valve (reflective of valve size and most open trim unless changes to the trim cannot be made);

(7) Simultaneous dump events to the same Tank System (unless all potential simultaneous dump events have been precluded through installation of timers, automation, or other measures);

(8) The calculation methods or simulation tools for processing the data inputs;

(9) The accuracy of the input data and results (*e.g.*, uncertainty of empirical correlations, representativeness of samples, process conditions); and

(10) Any other inputs needed to estimate the Potential Peak Instantaneous Vapor Flow Rate (*e.g.*, process heating, blanket gas, purge gas if applicable).

b. No later than April 1, 2015, Noble shall submit the Modeling Guideline to EPA and CDPHE for their review and comment. Noble may periodically update the Modeling Guideline as appropriate.

9. Engineering Design Standards. Noble shall complete Engineering Design Standards to provide sufficient guidance to design adequately sized and properly functioning Vapor Control Systems at the Tank Systems in each of the Three Line Pressure Groupings or any

subset of such groupings as Noble may determine appropriate (including individual Tank Systems).

    a.    These standards shall include, as appropriate:

        (1)    A review of vapor control technologies applicable to the Tank System including equipment-specific considerations and any associated pressure losses (*e.g.*, from flame arrestor);

        (2)    Identification of site-specific construction constraints (*e.g.*, footprint limitations; setbacks; maximum equipment counts);

        (3)    Size and design of the piping system between the Condensate tank(s) and the emissions control device (including consideration of equivalent pipe length and back pressure valves);

        (4)    Volume and duration of individual dump events; the nature of the flow of liquids to the Separator (*i.e.*, steady flow, slug flow, intermittent flow (*e.g.*, due to discrete well cycling events)); the minimum time between dump events; and the maximum number of dump events associated with a single well cycle with slug or intermittent flow;

        (5)    Minimum available headspace in the Condensate tank(s); and

        (6)    Engineering design considerations applied to account for issues associated with the Vapor Control System (*e.g.*, fouling, potential for liquids accumulation in lines, winter operations) and variability of data.

b.    Noble may rely on manufacturer specifications for individual components or pieces of equipment that are part of a Vapor Control System.

c.    These Engineering Design Standards shall be completed in sufficient time for Noble to complete the Engineering Evaluations and any necessary modifications for all of the Vapor Control Systems by no later than the applicable Engineering Evaluation Deadline. Noble may, but is not required to, submit the Engineering Design Standards to EPA and CDPHE for their review and comment.

10.    <u>Vapor Control System Engineering Evaluation</u>. For each Tank System, Noble shall assess the Tank System through a field survey or other appropriate means and apply the Modeling Guideline to determine the Potential Peak Instantaneous Vapor Flow Rate. Noble shall then apply an appropriate Engineering Design Standard to determine if the existing Vapor Control System at each Tank System is adequately designed and sized to handle the Potential Peak Instantaneous Vapor Flow Rate ("Engineering Evaluation").

a.    Noble shall complete all Engineering Evaluations in accordance with the schedule in the table below.

Engineering Evaluation Deadlines

| Tank System Group | Engineering Evaluation Deadline |
|---|---|
| Tank Systems that had, as of September 2014, Actual Uncontrolled Annual VOC Emissions of 50 TPY or more | May 1, 2015 |
| Tank Systems that are included in the Cross-Section Sampling Analysis study (*See* Paragraph 7 (Cross-Section Sampling Analysis) | July 1, 2015 |
| Tank Systems in Group I (and not otherwise subject to an earlier deadline) | December 31, 2015 |
| Tank Systems in Group II (and not otherwise subject to an earlier deadline) | December 31, 2016 |
| Tank Systems in Group III (and not otherwise subject to an earlier deadline) | July 1, 2017 |

  b.  If Noble has not completed an Engineering Evaluation for a Tank System and any necessary modifications by the applicable Engineering Evaluation Deadline, Noble shall shut-in all Well Production Operations associated with that Tank System by such deadline until an Engineering Evaluation of the Tank System and any necessary modifications to the Vapor Control System have been completed.

  c.  In the event that Well Production Operations are temporarily shut-in, Noble shall for the sole purpose of (i) undertaking an Engineering Evaluation at a Tank System, (ii) making necessary modifications pursuant to Paragraph 11 (Vapor Control System Modification), or (iii) taking corrective actions pursuant to Paragraph 18 (Reliable Information, Investigation, and Corrective Action) be allowed to resume Well

Production Operations associated with that Tank System for a period not to exceed five Calendar Days. Upon EPA and CDPHE written approval, the period of resumed Well Production Operations associated with a Tank System may be extended for up to five Calendar Days.

11.    <u>Vapor Control System Modification</u>. For those Vapor Control Systems that are not adequately designed and sized based on the Engineering Evaluation, Noble shall make all necessary modifications to reduce the Potential Peak Instantaneous Vapor Flow Rate (as recalculated using the Modeling Guideline) and/or increase the capacity of the Vapor Control System in accordance with the applicable Engineering Design Standard. Noble shall ensure that the modifications result in a Vapor Control System that is adequately designed and sized to handle the Potential Peak Instantaneous Vapor Flow Rate, as determined through application of an Engineering Design Standard. These modifications shall be completed for each Tank System in a Tank System Group by the applicable Engineering Evaluation Deadline, unless Well Production Operations associated with that Tank System have been shut-in prior to the applicable Engineering Evaluation Deadline (Paragraph 10.b (Vapor Control System Engineering Evaluation)).

12.    <u>Vapor Control System Verification</u>. No later than 30 days after the applicable Engineering Evaluation Deadline for a Tank System Group, Noble shall complete the following for (i) all Tank Systems in that group and (ii) any Tank Systems for which associated Well Production Operations had been temporarily shut-in and which were resumed by the deadline for that group and not previously completed and submitted:

      a.    Conduct an IR Camera Inspection of each Tank System during Normal Operations and during and immediately after a dump event to confirm the

Vapor Control System is adequately designed and sized and not emitting VOCs. This inspection must be conducted pursuant to a written standard operating procedure prepared by Noble and approved by EPA and CDPHE. A video record of each IR Camera Inspection done to comply with this Paragraph shall be recorded and kept on file;

b.  Comply with the requirements of Paragraph 18 (Reliable Information, Investigation, and Corrective Action) in the event that VOC emissions from a Tank System are observed during the IR Camera Inspection; and

c.  Complete and submit to EPA and CDPHE a "certification of completion report" that documents in a spreadsheet or database format:  (i) the design capacity of each Vapor Control System in standard cubic feet per hour; (ii) the Engineering Design Standard (which could be for an individual Tank System) that was used for each Vapor Control System, including identification of site-specific operational parameters or practices relied upon for use of the Engineering Design Standard (*e.g.*, measures to preclude simultaneous dump events, minimum available headspace in Condensate tanks, practices to address liquids accumulation in vent lines); (iii) the calculated Potential Peak Instantaneous Vapor Flow Rate in standard cubic feet per hour; (iv) the maximum operating pressure to which the Engineering Design Standard is certified; and (v) the date an IR Camera Inspection was completed and the results of such inspection.

13.  Post-Certification of Completion Modifications. If, after Noble has submitted to EPA and CDPHE a "certification of completion report" for a Tank System, Noble determines

that a specific Vapor Control System needs to be modified to address Reliable Information or meet the Performance Standards in this Consent Decree, Noble shall evaluate whether similar modifications are necessary at other Tank Systems using the same Engineering Design Standard. Noble shall submit in the next required Semi-Annual Report: (i) a summary of any evaluations of whether modifications were necessary at other Tank Systems and (ii) the timing, results, locations, and description of any modifications of other Tank Systems or a timeline for the completion of such modifications.

14.     AIRS Identification Numbers.  No later than 30 days after the applicable Engineering Evaluation Deadline for a Tank System Group, Noble shall verify for each Tank System in that Tank System Group: (i) whether an AIRS Identification Number assigned by CDPHE ("AIRS ID") is marked on each Condensate tank, and (ii) whether there is visible signage on each combustor or other air pollution control equipment identifying an AIRS ID assigned by CDPHE for each Condensate tank controlled by that equipment.

a.      If a Condensate tank is not marked with an AIRS ID, Noble shall either: (i) mark the tank with the AIRS ID if one has been assigned by CDPHE; or (ii) promptly seek an AIRS ID and mark the tank with it within two weeks of receipt of the AIRS ID.

b.      If a combustor or other air pollution control equipment is not marked with an AIRS ID for each Condensate tank controlled by that equipment, Noble shall either: (i) mark the equipment with the AIRS ID if one has been assigned by CDPHE; or (ii) promptly seek an AIRS ID and mark the equipment with the AIRS ID within two weeks after receipt of the AIRS ID.

22

15.     Evaluation of PRVs and Thief Hatches.  Noble shall evaluate the condition of all PRVs, thief hatches, and mounting and gaskets at each AIRS Tank, and the possibility of upgrading such equipment to reduce the likelihood of VOC emissions.  This evaluation shall be completed for each Tank System by no later than the applicable Engineering Evaluation Deadline for that Tank System and shall include the following information and actions:

a.      As part of the Semi-Annual Report due July 30, 2015, a summary report of the proactive measures taken over the last two years preceding the Effective Date including, to the extent available, the approximate number of PRVs and thief hatches replaced, the manufacturer(s) and model(s) of PRVs and thief hatches that were replaced and installed, the pressure set-points of the PRVs and thief hatches that were replaced, the pressure set-points of the PRVs and thief hatches that were installed, and the date range(s) when these PRVs and thief hatches were replaced;

b.      As part of the Semi-Annual Report due January 30, 2018, a summary report of the actions taken since the Effective Date including, to the extent available, the approximate number of PRVs and thief hatches replaced, the manufacturer(s) and model(s) of PRVs and thief hatches that were replaced and installed, the pressure set-points of the PRVs and thief hatches that were replaced, the pressure set-points of the PRVs and thief hatches that were installed, and the date range(s) when these PRVs and thief hatches were replaced;

c.  Noble shall ensure that every thief hatch is either welded or mounted with a suitable gasket to the tank in order to prevent VOC emissions at the attachment point to the tank; and

d.  If while evaluating the PRVs, thief hatches, and mountings and gaskets, Noble observes evidence of VOC emissions attributable to such PRVs, thief hatches, or mountings and gaskets, Noble shall repair, replace, or upgrade, as appropriate, such PRVs, thief hatches, or mountings and gaskets.

16.  <u>Directed Inspection and Preventative Maintenance Program</u>.  No later than April 15, 2015, Noble shall develop and submit for review and comment by EPA and CDPHE a directed inspection and preventative maintenance ("DI/PM") program.  Noble shall implement the DI/PM program at each Tank System by no later than the applicable Engineering Evaluation Deadline for that Tank System.  The DI/PM program shall:

a.  Address common, system-wide inspection and response procedures for the Vapor Control Systems;

b.  Address common, system-wide inspection and preventative maintenance procedures for all Vapor Control Systems (*e.g.*, inspection for continuous venting indicative of a stuck or improperly seated Separator liquid dump valve, verification of operating parameters, replacement of "wear" equipment, possible liquids accumulation in Vapor Control System vent lines);

c.  Address any site-specific parameters or practices relied on in the verification of a Vapor Control System, including those parameters or

24

practices included in a certification of completion report as provided in

Paragraph 12.c (Vapor Control System Verification); and

d.    Establish requirements for appropriate documentation of compliance with

DI/PM practices and procedures so that the Parties can verify that the

DI/PM program is being implemented.

17.    <u>Periodic Inspections and Monitoring</u>.  Noble shall undertake a program for inspection and monitoring of Tank Systems in accordance with the requirements of this Paragraph.

a.    Tank Systems shall be inspected using an Approved Instrument

Monitoring Method ("AIMM").  AIMM includes optical gas imaging

infrared cameras or other inspection methods meeting EPA Method 21

standards.  Alternative methods may be used subject to the approval of

both EPA and CDPHE, which approval shall not be unreasonably

withheld.

b.    With the exception of Tank Systems that have less than 6 TPY Actual

Uncontrolled Annual VOC Emissions, Noble shall inspect all Tank

Systems on the schedule set forth in the table below.  Noble shall inspect

50% of all Tank Systems that have less than 6 TPY Actual Uncontrolled

Annual VOC Emissions at least once before December 31, 2016.  An IR

Camera Inspection of a Tank System completed pursuant to Paragraph

12.a (Vapor Control System Verification) during the applicable inspection

period (see table below) shall also count as an inspection for purposes of

this Paragraph.

| Size of Tank System (Actual Uncontrolled Annual VOC Emissions) | Frequency of Inspections | Date |
|---|---|---|
| ≥50 TPY | Monthly | Beginning no later than January 31, 2015 |
| ≥12 and <50 TPY | Quarterly | Beginning no later than September 29, 2015 |
| ≥6 and <12 TPY | Annual | Beginning no later than March 30, 2016 |
| <6 TPY | One time | Completed no later than December 31, 2016 |

c.   Noble shall maintain one or more logs documenting the following for each inspection:

(1)   The date, time, and AIRS ID for each Condensate tank;

(2)   The date and duration of any period where the thief hatch, PRV, or other openings are found to be emitting VOCs, except for emissions that are reasonably required for maintenance, gauging, or safety of personnel and equipment; and

(3)   The timing of and efforts made to eliminate emissions from thief hatches, PRVs, or other openings.

d.   In the event that VOC emissions from a Tank System are observed or detected during an inspection under this Paragraph, Noble shall comply with the requirements of Paragraph 18 (Reliable Information, Investigation, and Corrective Action).

18.    <u>Reliable Information, Investigation, and Corrective Action</u>.

    a.    Within five Calendar Days after obtaining any Reliable Information, Noble shall either (i) complete all necessary corrective actions to address the VOC emissions or (ii) temporarily shut-in Well Production Operations associated with the Tank System.  In the event that Well Production Operations are temporarily shut-in, Noble shall proceed as follows:

        (1)    If the Tank System has not yet undergone an Engineering Evaluation, Well Production Operations shall remain shut-in until the Engineering Evaluation and any necessary modifications have been completed, and Noble shall comply with the requirements of Paragraph 12.a (Vapor Control System Verification) at that Tank System within 30 days of resuming any Well Production Operations associated with that Tank System.

        (2)    If the Tank System has already undergone an Engineering Evaluation, Well Production Operations shall remain shut-in until completion of any necessary modifications, including if appropriate a re-evaluation of the Vapor Control System and Engineering Design Standard.  Noble shall comply with the requirements of Paragraph 12.a (Vapor Control System Verification) at that Tank System within 30 days of resuming any Well Production Operations associated with that Tank System.

b.    For each Tank System with associated Well Production Operations temporarily shut-in pursuant to the requirements of this Paragraph, Noble shall document in a spreadsheet the following:

    (1)    The date Reliable Information was obtained resulting in a temporary shut-in;

    (2)    The AIRS ID(s) of the Tank System;

    (3)    The date that such Well Production Operations were temporarily shut-in;

    (4)    The date modifications were made, including a description of the modifications;

    (5)    The date that Well Production Operations were resumed; and

    (6)    The date post-repair/Engineering Evaluation that an IR Camera Inspection was completed, and a summary of the results of that inspection.

c.    For each instance where Noble obtains Reliable Information and within five Calendar Days completes all necessary corrective actions, Noble shall document in a spreadsheet the following:

    (1)    The date Reliable Information was obtained;

    (2)    The AIRS ID(s) of the Tank System; and

    (3)    The date corrective actions were made, including a description of the corrective actions.

d.     Noble shall attach copies of the spreadsheets required by this Paragraph to the next Semi-Annual Report that follows at least 30 days after corrective actions or any required IR Camera Inspection is completed.

19.     <u>Performance Standard</u>.  Following the completion of an Engineering Evaluation and any necessary modifications at a Tank System, Noble shall:

a.     Operate and maintain air pollution control equipment consistent with manufacturer specifications and good engineering and maintenance practices and shall keep manufacturer specifications on file;

b.     Ensure that all air pollution control equipment is adequately designed and sized to achieve at least a 95% control efficiency for VOCs and to handle reasonably foreseeable fluctuations in emissions of VOCs (fluctuations in emissions that occur when a Separator dumps into the tank are reasonably foreseeable);

c.     Ensure that all Condensate collection, storage, processing, and handling operations, regardless of size, are designed, operated, and maintained so as to minimize leakage of VOCs to the atmosphere to the maximum extent practicable;

d.     Ensure that an AIRS ID is marked on all Condensate tanks; and

e.     Ensure that visible signage is located with all air pollution control equipment identifying the AIRS ID for each Condensate tank controlled by that equipment.

20.     <u>Third-Party Verification</u>.  Noble's completion of the Engineering Evaluations and any necessary modifications shall be subject to verification by a third party as follows:

29

a.    Noble shall retain one or more qualified third-party consultants, not owned by Noble or any of its subsidiary or affiliated companies (hereinafter "Auditor"), to conduct an audit in calendar year 2016 of Tank Systems that are included in "certification of completion" reports submitted as of December 31, 2015 and a second audit in calendar year 2018 of all previously unaudited Tank Systems.  In each audit, the Auditor shall independently verify that the Engineering Evaluations and any necessary modifications were completed in accordance with the requirements of this Consent Decree.

b.    No later than November 1, 2015 for the first audit and no later than November 1, 2017 for the second audit, Noble shall notify EPA and CDPHE in writing of Noble's recommended consultant(s), provide statements of qualification for the consultant(s), and provide the proposed audit work plan.  After consultation with CDPHE, EPA shall either approve or disapprove the proposed consultant(s) and the proposed work plan.  If EPA and CDPHE have not responded within 30 days, Noble's recommended consultant shall be deemed approved and Noble may proceed with its proposed work plan.  In the event EPA disapproves the proposed consultant(s) and/or proposed work plan, EPA shall state the reasons for its disapproval of the consultant or proposed work plan in writing, and the process will be repeated with Noble having 30 days from the date of disapproval to propose alternate consultant(s), provide statements of qualification, and/or provide a revised work plan to EPA and

CDPHE.  In the event a consultant or work plan is not approved by January 31, 2016 for the first audit and January 31, 2018 for the second audit, all deadlines in this Paragraph shall be extended by an equivalent period to the time beyond January 31 that it takes for consultant and/or work plan approval.

c.      Once selected by Noble and approved by EPA, Noble shall have the Auditor conduct a document review of each Tank System to be included in that audit to verify that Noble has applied the Modeling Guideline and the applicable Engineering Design Standard so that the Vapor Control Systems are adequately designed and sized to handle the Potential Peak Instantaneous Vapor Flow Rate.

d.      In addition to the document review, Noble shall have the Auditor conduct an IR Camera Inspection at a subset of Tank Systems included in that audit as follows:  (i) all Tank Systems that had, as of September 2014, Actual Uncontrolled Annual VOC Emissions of 50 TPY or more; (ii) 20% of all Tank Systems that had, as of September 2014, Actual Uncontrolled Annual VOC Emissions less than 50 TPY and equal to or greater than 12 TPY; and (iii) 5% of all Tank Systems that had, as of September 2014, Actual Uncontrolled Annual VOC Emissions less than 12 TPY.  As of the conclusion of the second audit, Noble shall use its best efforts to ensure that the required percentages of IR Camera Inspections for Tank Systems in each grouping described above is also met for each of the Three Line

Pressure Groupings. A video record of all IR Camera Inspections done to comply with this Paragraph shall be recorded and kept on file.

e.  If 20% or more of the total number of Tank Systems with Vapor Control Systems using the same Engineering Design Standard and undergoing an IR Camera Inspection by an Auditor are found to be emitting VOCs, Noble shall complete within 90 days a VCS Root Cause Analysis and identify appropriate response actions to be taken to address the cause(s) and adequately design and size such Vapor Control Systems to handle the Potential Peak Instantaneous Vapor Flow Rate, along with a proposed schedule for the implementation of those response actions. In the next Semi-Annual Report, Noble shall submit the results of each VCS Root Cause Analysis, including the timeline for response actions if those are not already completed at the time of the submission of the VCS Root Cause Analysis.

f.  The document review and IR Camera Inspections referred to in this Paragraph shall be completed no later than December 31, 2016 for the first audit and no later than December 31, 2018 for the second audit. Noble shall have the Auditor prepare a draft written report ("Draft Audit Report") marked as Confidential Business Information describing such work and conclusions reached within 90 days after completing the document review and IR Camera Inspections. This Draft Audit Report, and any drafts or other documentation prepared prior to such report, shall be shared by the Auditor with the Parties simultaneously in accordance

with Section XVII (Notices).  The Draft Audit Report for each audit will

be subject to review and approval by EPA, after consultation with

CDPHE; provided, however, that Noble shall have 30 days to review and

address any EPA or CDPHE comments on the Draft Audit Report before

issuance of a Final Audit Report.  Once approved, Noble shall post all

non-confidential portions of each Final Audit Report on its website.

21.   <u>Tank Pressure Monitoring</u>.  Noble shall install, calibrate (in accordance with

manufacturer recommendations, if available), operate, and maintain pressure monitors linked to

and continuously monitored (*i.e.*, one measurement every 15 seconds with a data transmission

every hour) by a central monitoring location in accordance with the requirements of this

Paragraph.

a.   The deadlines for equipping Tank Systems with pressure monitors and the

Tank Systems to be equipped with those monitors are:  (i) November 15,

2015 for all Tank Systems that had, as of September 2014, Actual

Uncontrolled Annual VOC Emissions of 50 TPY or more; (ii) December

31, 2016 for at least 10% of all Tank Systems that had, as of September

2014, Actual Uncontrolled Annual VOC Emissions less than 50 TPY and

equal to or greater than 6 TPY; and (iii) July 1, 2017 for at least 2% of all

Tank Systems that had, as of September 2014, Actual Uncontrolled

Annual VOC Emissions less than 6 TPY.  Noble shall use its best efforts

to equally distribute pressure monitors for Tank Systems in each of the

groupings described above among the Three Line Pressure Groupings.

Where a Tank System has multiple Condensate tanks in series, Noble shall

only be required to install a pressure monitor on one of the Condensate tanks.

b.  For the first six months after the first deadline for installation of pressure monitors, Noble shall have a performance optimization period to evaluate calibration and optimize pressure monitor performance and reliability. This period will allow Noble, and its contractors or pressure monitor vendors as appropriate, an opportunity to ensure that the pressure monitors, to the greatest extent practicable, are producing quality data that may be used to identify the potential for over-pressurization of Tank Systems (*e.g.*, optimization of pressure monitor location on a Tank System, determination of pressure measurements and frequency indicative of potential for over-pressurization).

c.  Following the performance optimization period, if there are two or more measurements within a 48-hour period that exceed the "trigger point" for a Tank System, Noble shall conduct a site investigation. The investigation shall include a site visit to test the pressure monitor and the operating parameters of the associated Tank System. During the site visit, Noble shall either conduct an IR Camera Inspection or an Audio, Visual, Olfactory ("AVO") inspection of the Tank System. The investigation shall be completed no later than the end of the Calendar Day following the second measurement. For purposes of this Paragraph, "trigger point" means the lowest set point of any device designed to relieve pressure from a Condensate tank minus two ounces. Set point refers to the pressure (in

ounces) at which a device is designed to relieve pressure.  For example, if a Condensate tank is equipped with a PRV and a thief hatch and the set point of the PRV is 14 ounces and the set point of the thief hatch is 16 ounces, the "trigger point" would be 12 ounces (*i.e.*, the lowest set point of any device on the tank minus two ounces).  In the event a Tank System requires three site investigations in a consecutive 30 Calendar Day period, Noble shall conduct a VCS Root Cause Analysis.

d.      The central monitoring location shall maintain records of the following and this information shall be provided in a spreadsheet with each Semi-Annual Report:  (i) the date, time, location, and numerical value of all pressure readings in excess of the trigger point, and (ii) the date and results of all corresponding site investigations and all corresponding VCS Root Cause Analyses.

e.      At any time, Noble may submit to EPA and CDPHE a request for alternative criteria (*e.g.*, pressure measurements and number of measurements in a given time period) triggering a site investigation and/or VCS Root Cause Analysis.  EPA may, after consultation with CDPHE, grant or deny Noble's request in whole or in part.

f.      After at least 18 months of operation of the pressure monitors, including the six-month performance optimization period, if Noble demonstrates and EPA in consultation with CDPHE determines that it is infeasible or overly burdensome in relation to the benefits to continue operating one or more of the pressure monitors, Noble may discontinue operation of and remove

35

the pressure monitor(s).  As part of Noble's demonstration, Noble shall submit to EPA and CDPHE an analysis of operation and maintenance of such monitors to date, including a summary of all measurements triggering site investigations or VCS Root Cause Analyses, the results of those site investigations or analyses, and corrective actions taken.  If EPA, after consultation with CDPHE, rejects Noble's demonstration, such conclusions are subject to Section XIII (Dispute Resolution).  Operation of a pressure monitor shall be considered infeasible if (i) the monitor cannot be kept in proper condition (including calibration) for sufficient periods of time to produce reliable, adequate, or useful measurements; or (ii) recurring, chronic, or unusual equipment adjustment, servicing, or replacement needs cannot be resolved through reasonable expenditures.

## V.     PERMITS

22.     <u>Permits Prior to Construction or Installation</u>.  Noble shall obtain all required federal, state, or local permits or approvals necessary for performing any obligation under this Consent Decree.  Noble may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation if Noble has submitted timely and administratively complete applications and has taken all other actions necessary to obtain all such permit(s) or approval(s).

## VI.     ENVIRONMENTAL MITIGATION PROJECTS

23.     Noble shall implement the Environmental Mitigation Projects ("Projects") described in Appendix C in compliance with the approved plans and schedules for such Projects

and other terms of this Consent Decree.  In implementing the Projects described in Sections III-VI in Appendix C, Noble shall spend no less than $4.5 million in Project Dollars.  Noble shall not include its own personnel costs in overseeing the implementation of the Projects as Project Dollars.

24.     Noble shall maintain and, within 30 days of an EPA or CDPHE request, provide copies of all documents to identify and substantiate the Project Dollars expended to implement the Projects described in Appendix C.

25.     All plans and reports prepared by Noble pursuant to the requirements of this Section VI (Environmental Mitigation Projects) and required to be submitted to EPA and CDPHE shall be made available to the public from Noble upon request and without charge.

26.     Noble shall certify, as part of each plan submitted to EPA and CDPHE for any Project, that Noble is not otherwise required by law to perform the Project, that Noble is unaware of any other person who is required by law to perform the Project, and that Noble will not use any Project, or portion thereof, to satisfy any obligations that it may have under other applicable requirements of law.

27.     Noble shall use its best efforts to secure as much environmental benefit as possible for the Project Dollars expended, consistent with the applicable requirements and limits of this Decree.

28.     If Noble elects (where such election is allowed) to undertake a Project by contributing funds to another person or entity that will carry out the Project in lieu of Noble, but not including Noble's agents or contractors, that person or instrumentality must, in writing to EPA:  (i) identify its legal authority for accepting such funding; and (ii) identify its legal authority to conduct the Project for which Noble contributes the funds.  Regardless of whether

Noble elects (where such election is allowed) to undertake a Project by itself or to do so by contributing funds to another person or instrumentality that will carry out the Project, Noble acknowledges that it will receive credit for the expenditure of such funds as Project Dollars only if Noble demonstrates that the funds have actually been spent by either Noble or by the person or instrumentality receiving them, and that such expenditures meet all requirements of this Decree.

29.     Noble shall comply with the reporting requirements described in Appendix C.

30.     In connection with any communication to the public or shareholders regarding Noble's actions or expenditures relating in any way to the Environmental Mitigation Projects in this Decree, Noble shall include prominently in the communication the information that the actions and expenditures were required as a part of a Decree.

31.     Within 60 days following the completion of each Project required under this Consent Decree (including any applicable periods of demonstration or testing), Noble shall submit to EPA and CDPHE a report that documents the date the Project was completed, the results achieved by implementing the Project, including the estimated emissions reductions or other environmental benefits, and the Project Dollars expended by Noble in implementing the Project.

## VII.   CIVIL PENALTY

32.     Within 30 days after the Effective Date, Noble shall pay a civil penalty pursuant to Section 113 of the Act, 42 U.S.C. § 7413, in the amount of $3,475,000 to the United States and a civil penalty pursuant to Section 25-7-122 C.R.S., in the amount of $1,475,000 to the State. If any portion of the civil penalty due to Plaintiffs is not paid when due, Noble shall pay interest on the amount past due, accruing from the Effective Date through the date of payment at the rate specified in 28 U.S.C. § 1961.

33.     Federal Payment Instructions.  Noble shall pay $3,475,000 to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures.  The costs of such EFT shall be Noble's responsibility. Payment shall be made in accordance with instructions to be provided to Noble by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the District of Colorado.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number that Noble shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions by fax to:  Treasury Manager, Noble Energy, Inc., 1001 Noble Energy Way, Houston, Texas 77070, fax number (832) 698-5822, with a copy by fax to Counsel, Noble Energy, Inc., 1625 Broadway, Suite 2200, Denver, Colorado 80202, fax number (303) 228-4293 on behalf of Noble.  Noble may change the individual to receive payment instructions on its behalf by providing written notice of such change in accordance with Section XVII (Notices).

At the time of payment, Noble shall send notice that payment has been made:  (i) to the United States via email or regular mail in accordance with Section XVII (Notices); and (ii) to EPA in accordance with Section XVII (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States and the State of Colorado v. Noble Energy, Inc.*, and shall reference the civil action number, CDCS number, and DOJ case number 90-5-2-1-10811.

34.     State Payment Instructions.  Noble shall pay $1,475,000 to the State.  Noble shall make payment by certified, corporate or cashier's check drawn to the order of "Colorado Department of Public Health and Environment" and delivered to the attention of Manager,

Compliance, Air Pollution Control Division, 4300 Cherry Creek Drive South, APCD-SS-B1,

Denver, Colorado 80246-1530.

At the time of payment, Noble shall send notice that payment has been made to the State

in accordance with Section XVII (Notices).  Such notice shall state that the payment is for the

civil penalty owed pursuant to the Consent Decree in *United States and the State of Colorado v.*

*Noble Energy, Inc.*, and shall reference the civil action number.

35.     <u>Not Tax Deductible</u>.  Noble shall not deduct any penalties paid under this Consent

Decree pursuant to this Section or Section XI (Stipulated Penalties) in calculating its federal,

state, or local income tax.

### VIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECTS

36.     Noble shall perform two Supplemental Environmental Projects ("SEP") as

described in this Section.  Noble shall perform a SEP to sponsor a study to identify protocols for

improved reliability of sampling and analysis of Pressurized Liquids to improve data accuracy in

modeling flashing losses at Condensate tanks (Pressurized Liquids Sampling and Analysis Study

SEP) in accordance with all provisions of this Section and Appendix D.  Noble shall also

perform a SEP to sponsor the replacement and/or retrofit of inefficient, higher-polluting wood-

burning appliances with cleaner-burning, more energy-efficient heating appliances and

technologies (Wood-Burning Appliance Changeout SEP) in accordance with all provisions of

this Section.

37.     <u>Pressurized Liquids Sampling and Analysis Study SEP</u>.  Noble shall provide

funding of no less than $1 million to retain a qualified research laboratory, consulting firm, or

university with expertise in upstream oil and gas operations (hereinafter "Laboratory") to

complete a scientific evaluation of the reliability of various Pressurized Liquids sampling and analytical methods consistent with the guidelines set forth in Appendix D.

    a.    The purpose of the study is to isolate individual variables of the sampling and analytical methods typically used to obtain information regarding the flash potential and makeup of pressurized hydrocarbon liquids and to identify protocols for determining how these samples can be reliably obtained, handled, and analyzed to produce accurate analytical results for practical application in modeling flashing losses.

    b.    Noble will provide recommendations to the Laboratory about locations to be sampled as part of the study, and cooperate fully with the Laboratory in the collection of Pressurized Liquids samples, natural gas samples, direct flash gas measurements, and related data.

    c.    Noble shall have the Laboratory prepare a report of its findings and conclusions. The report will be subject to review and comment by EPA and CDPHE. Following EPA and CDPHE comments, if any, Noble shall promptly post the final report and associated data on its website. The Parties shall use their best efforts to complete the report by June 30, 2017.

38.    <u>Wood-Burning Appliance Changeout SEP</u>. Consistent with the requirements of this Section, Noble shall propose a SEP Work Plan to spend no less than $1 million to sponsor a wood-burning appliance replacement and/or retrofit project that Noble shall ensure is implemented by one or more third-party non-profit organizations or entities ("Implementing Entity").

a.  The Wood-Burning Appliance Changeout SEP shall replace or retrofit inefficient, higher-polluting wood-burning or coal appliances with cleaner-burning, more energy-efficient heating appliances and technologies, such as by:  (i) replacing older hydronic heaters with EPA-certified hydronic heaters, or with EPA-certified wood stoves, other cleaner-burning, more energy-efficient hearth appliances (*e.g.*, wood pellet, gas, or propane appliances), or EPA Energy Star qualified heating appliances; (ii) replacing non-EPA-certified wood stoves with EPA-certified wood stoves or cleaner-burning more energy-efficient appliances; and (iii) replacing or retrofitting wood-burning fireplaces with EPA Phase II qualified retrofit devices or cleaner-burning natural gas fireplaces.  The appliances that are replaced under this SEP shall be permanently removed from use and recycled/disposed of appropriately.

b.  The Wood-Burning Appliance Changeout SEP shall provide incentives for the wood-burning appliance replacements and retrofits through rebates, vouchers, discounts, and for income-qualified residential homeowners, full/near-full replacement costs.

c.  To qualify for the Wood-Burning Appliance Changeout SEP, the wood-burning appliance must be located in the Non-Attainment Area and be in regular use in a primary residence or in a frequently used non-residential building (*e.g.*, churches, greenhouses, schools) during the heating season, and preference shall be given to those appliances that are a primary or a significant source of heat.

42

d.    Noble shall limit the use of Project Dollars for administrative costs associated with implementation of the Wood Burning Appliance Changeout SEP to no greater than 10% of the Project Dollars that Noble provides to a specific non-profit organization.  If, after two years following the Effective Date, significant additional administrative costs (*e.g.*, additional advertising or outreach costs), not contemplated at the SEP's inception, will be required to fully implement the SEP within the time frames set forth in this Paragraph, the non-profit organization(s) administering the SEP may request that Noble allow the use of additional Project Dollars for such costs.  Noble may, after consultation with EPA and CDPHE, allow for no more than an additional 2% of Project Dollars to be applied to administrative costs.

e.    Every participant that receives a new wood-burning appliance or retrofits an existing wood-burning appliance shall receive information related to proper operation of their new appliance and the benefits of proper operation (*e.g.*, lower emissions, better efficiency), including, if applicable, the importance of burning dry seasoned wood and provision of a wood moisture meter.  The costs associated with this element of the Project shall not be considered part of the administrative costs, and shall be marginal as compared to the total funds provided to the Implementing Entity.

f.    Noble shall ensure that the Implementing Entity consults with EPA's Residential Wood Smoke Reduction Team and implements the Wood-

43

Burning Appliance Changeout SEP consistent with the materials available on EPA's Burn Wise website at http://www.epa.gov/burnwise.

g.  In addition to the information required to be included in periodic reports submitted pursuant to Paragraph 58 (Periodic Reports), Noble shall include the following information with respect to the Wood-Burning Appliance Changeout SEP for each period covered by the periodic report: (i) a description of the proposed outreach to raise awareness within the Non-Attainment Area, and (ii) the number and type of appliances made available through the Wood-Burning Appliance Changeout SEP, the cost per unit, and the value of the rebate or incentive per unit.

h.  SEP Work Plan.  Within 90 days from the Date of Entry, Noble shall submit a SEP Work Plan to the EPA for review and approval.  Noble shall describe how the SEP Work Plan is consistent with the requirements of this Section of the Consent Decree and shall also include the following information:  (i) identification of the proposed Implementing Entity, (ii) identification of any other entities with which the Implementing Entity proposes to partner to implement the SEP (e.g., non-profit associations with expertise in wood stove technology and/or the health or environmental impacts of air pollution associated with wood stoves, weatherization offices, individual stove retailers, entities that will dispose of the old appliances), (iii) a description of the schedule for completion and the budgetary increments in which Noble shall provide the funding for the SEP, (iv) an estimate of the number and type of appliances Noble

intends to subsidize or make available through the Wood-Burning
Appliance Changeout SEP, the cost per unit, and the value of the rebate or
incentive per unit, (v) the criteria the Implementing Entity will use to
determine which income-qualified owners shall be eligible for full/near-
full cost replacement, and (vi) a description of proposed outreach to raise
awareness within the Non-Attainment Area.

    i.    Noble shall complete the Wood-Burning Appliance Changeout SEP not
later than three years after approval of the SEP Work Plan and in
accordance with the schedule and requirements in the approved SEP Work
Plan, except that Noble may request an extension of time to complete the
Project if it appears likely that all funds will not be spent within such three
year period despite Noble's best efforts to implement the Project.

39.    Noble is responsible for satisfactory completion of the SEPs in accordance with
the requirements of this Consent Decree.  Noble may use contractors or consultants in planning
and implementing the SEPs.

40.    With regard to the SEPs, Noble certifies the truth and accuracy of each of the
following:

    a.    That, as of the date of executing this Consent Decree, Noble is not
required to perform or develop the SEPs by any federal, state, or local law
or regulation and is not required to perform or develop the SEPs by
agreement, grant, or as injunctive relief awarded in any other action in any
forum;

    b.    That the SEPs are not projects that Noble was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

    c.    That Noble has not received and will not receive credit for the SEPs in any other enforcement action; and

    d.    That Noble will not receive any reimbursement for any portion of the SEPs from any other person.

41.    <u>SEP Completion Report</u>.  Within 30 days after completion of a SEP, Noble shall submit a SEP Completion Report to EPA and CDPHE in accordance with Paragraph 105 (Notices) of this Consent Decree.  The SEP Completion Report shall contain the following information:

    a.    A detailed description of the SEP as implemented;

    b.    A description of any problems encountered in completing the SEP and solutions thereto;

    c.    An itemized list of all eligible SEP costs expended;

    d.    Certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

    e.    A description of the environmental and public health benefits resulting from implementation of the SEP.

42.    The EPA may, in its sole discretion, require information in addition to that described in Paragraph 41 (SEP Completion Report), in order to evaluate Noble's SEP Completion Report.

43.     After receiving the SEP Completion Report, the United States will notify Noble whether or not Noble has satisfactorily completed the SEP.  If Noble has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section XI (Stipulated Penalties) of this Decree.

44.     Disputes concerning the satisfactory performance of a SEP and the amount of eligible SEP costs may be resolved under Section XIII (Dispute Resolution) of this Consent Decree.  No other disputes arising under this Section shall be subject to Dispute Resolution.

45.     Each submission required under this Section shall be signed by a Noble official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 63.

46.     Any public statement, oral or written, in print, film, or other media, made by Noble making reference to a SEP under this Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, *United States and the State of Colorado v. Noble Energy, Inc.*, taken on behalf of the U.S. Environmental Protection Agency and the State of Colorado under the Clean Air Act."

47.     Noble certifies that it is not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEPs described in Paragraph 36. Noble shall certify to EPA prior to providing funds to the SEP implementers that Noble has inquired of them whether they are a party to an open federal financial assistance transaction that is funding or could fund the same activity as the SEP and has been informed by the implementers that neither is a party to such a transaction.  For purposes of these certifications, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally guaranteed loan guarantee, or other mechanism for providing federal financial assistance for which the performance period has not yet expired.

48.     For federal and state income tax purposes, Noble agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEPs.

49.     <u>Not Tax Deductible</u>.  Noble shall not deduct any amounts paid under this Consent Decree pursuant to this Section VIII (Supplemental Environmental Projects) or Section XI (Stipulated Penalties) in calculating its federal, state, or local income tax.

## IX.     STATE-ONLY SUPPLEMENTAL ENVIRONMENTAL PROJECTS

50.     In order to settle the matters contained herein, and in addition to the State portion of the civil penalty identified in Section VII (Civil Penalty), Noble agrees to perform one or more State-Only Supplemental Environmental Project(s) ("SSEP(s)"), which Noble and the CDPHE agree is intended to secure significant environmental or public health protection and improvements.  Noble intends to spend not less than $2 million for SSEP(s).  Any portion of the $2 million not spent on SSEP(s) shall be remitted to the State as an additional civil penalty.

51.     Noble is currently considering one or more possible third party SSEP activities in the State of Colorado.  Noble will submit one or more SSEP proposals for CDPHE approval within 90 days after the Effective Date.  If CDPHE disapproves the SSEP(s) or the State and Noble are otherwise unable to agree upon a SSEP or SSEP(s) within 150 days of the Effective Date, Noble shall pay the SSEP component of the civil penalty as an additional civil penalty in the manner prescribed in Paragraph 34 (State Payment Instructions) above and no later than 180 days after the Effective Date.

52.     Noble shall not deduct the payment of the SSEP donation provided for in this Section for any tax purpose or otherwise obtain any favorable tax treatment for such payment or project.

53.     The SSEP(s) performed by Noble may not be any project that Noble is required to perform or develop by any federal, state, or local law or regulation and may not be one that Noble is required to perform or develop by any agreement, grant, or injunctive relief in this or any other case.  Noble further agrees that it has not and will not receive any credit in any other enforcement action for the SSEP(s).

54.     Noble shall submit a SSEP Completion Report to CDPHE within 60 days of the completion of each of the SSEP(s).  The SSEP Report shall contain the following information:

      a.     A detailed description of the SSEP as implemented;

      b.     A description of any operating problems encountered and the solutions thereto;

      c.     Itemized costs, documented by copies of purchase orders and receipts or canceled checks;

      d.     Certification that the SSEP has been fully implemented pursuant to the provisions of this Consent Decree; and

      e.     A description of the environmental and public health benefits resulting from implementation of the SSEP (with quantification of the benefits and pollutant reductions, if feasible).

55.     Noble agrees that failure to submit the Completion Report with the required information shall be deemed a violation of this Consent Decree and Noble shall become liable for penalties as a violation of this Decree.

56.     All SSEPs must be completed to the satisfaction of CDPHE, within four years of the execution of this Consent Decree, and must be operated for the useful life of the SSEP.  If Noble fails to fully and satisfactorily implement a SSEP within this time period or fails to

operate the SSEP for its entire useful life, CDPHE shall provide written notice of such failure and a demand for payment of the remaining amount up to $2 million. Notwithstanding the approval of any SSEP expenditures previously submitted to CDPHE, the remaining amount up to $2 million shall be paid to CDPHE within 30 days of receipt of a demand for payment by CDPHE.

57.     Noble shall include in any public statement, oral or written making reference to the SSEP the following language: "This project was undertaken in connection with the settlement of an enforcement action taken by the Colorado Department of Public Health and Environment, Air Pollution Control Division, for violations of air quality laws and regulations."

## X.     PERIODIC REPORTING

58.     After entry of this Consent Decree, Noble shall submit to the United States and the State in accordance with the requirements of Section XVII (Notices), a periodic Semi-Annual Report within 30 days after the end of each half of the calendar year (January through June, and July through December). The Semi-Annual Report shall contain the following information:

   a.   Cross-Section Sampling Analysis (Paragraph 7): Status and/or completion of sampling, QA/QC assessment, and review of analytical results to the extent not previously reported.

   b.   Modeling Guideline (Paragraph 8): A copy of the Modeling Guideline if it was revised during the reporting period.

   c.   Engineering Design Standards (Paragraph 9): Copies of any Engineering Design Standards completed and implemented during the reporting period that were used at more than one Tank System, unless previously provided.

Noble shall not be required to submit site-specific Engineering Design Standards, unless requested by EPA or CDPHE.

d.   <u>Engineering Evaluation (Paragraph 10)</u>:  Status and/or completion of Engineering Evaluations, including a list of any Tank Systems with associated Well Production Operations temporarily shut-in pending completion of the Engineering Evaluation during the reporting period.

e.   <u>Vapor Control System Modification (Paragraph 11)</u>:  A summary of modifications to Vapor Control Systems.

f.   <u>Post-Certification of Completion Modifications (Paragraph 13)</u>:  A summary of any evaluations undertaken during that reporting period of whether modifications were necessary at other Tank Systems and the timing, results, locations, and description of any modifications of other Tank Systems or a timeline for the completion such modifications.

g.   <u>AIRS Identification Numbers (Paragraph 14)</u>:  Status and/or completion of verification of required AIRS IDs on AIRS Tanks and air pollution control equipment to the extent not previously reported.

h.   <u>Evaluation of PRVs and Thief Hatches (Paragraph 15)</u>:  Status and/or completion of PRV and thief hatch evaluations to the extent not previously reported.

i.   <u>Directed Inspection and Preventative Maintenance Program (Paragraph 16)</u>:  Status as to development and implementation of the DI/PM program, including a copy of Noble's DI/PM program if revised during the reporting period.

j.      Periodic Inspections and Monitoring (Paragraph 17):  A summary of inspections and monitoring undertaken at Tank Systems, including a summary of inspection methods used and any VOC emissions detected.

k.      Reliable Information (Paragraph 18):  Copies of the spreadsheets as specified and required by Paragraph 18.d.

l.      Tank Pressure Monitoring (Paragraph 21):  Status and/or completion of installation of pressure monitors, including attachment of the information identified in Paragraph 21.d.

m.      Environmental Mitigation Projects (Section VI and Appendix C):  A summary of activities undertaken, status of Environmental Mitigation Project milestones set forth in Appendix C, and a summary of costs incurred since the previous report.

n.      SEPs (Section VIII and Appendix D): A summary of activities undertaken, status of SEP milestones set forth in Section VIII or Appendix D, and a summary of costs incurred since the previous report.

o.      A summary of any problems encountered or anticipated, together with implemented or proposed solutions, if available, to the extent not addressed in an End of Phase Report.

p.      A description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

59.     <u>End of Phase Reports</u>.  Noble shall complete an End of Phase Report for public dissemination after each Engineering Evaluation Deadline.  The End of Phase Reports shall be submitted with the Semi-Annual Reports in accordance with the Report Deadlines table below. Each End of Phase Report shall include the following:  (i) an overview of Engineering Design Standards used by Noble for the Tank Systems in that group and a summary of how such standards addressed the considerations identified in Paragraph 9 (Engineering Design Standards); (ii) a discussion of limitations on operation and/or design parameters (*e.g.*, maximum natural gas sales line pressure, Peak Potential Instantaneous Vapor Flow Rate, engineering factor) for which each such Engineering Design Standard is appropriately used; (iii) a description of any design or implementation challenges encountered; (iv) a summary of results obtained and of the efficacy of any Vapor Control System modifications (including a summary of any instances of VOC emissions after modifications and a description of any associated corrective actions); and (v) a discussion of any other significant observations made.  End of Phase Reports shall be subject to review and approval by EPA, after consultation with the State.  Once approved, Noble shall prominently post each End of Phase Report on its website.

60.     The following table summarizes deadlines for reports required by this Consent Decree, except that deadlines for completion reports for Environmental Mitigation Projects and SEPs are not specified below as those reports are tied to completion of such projects rather than a date certain:

Report Deadlines

| Report(s) | Deadline for Submitting Report(s) |
|---|---|
| Certification of Completion Report for Tank Systems with Actual Uncontrolled Annual VOC Emissions of 50 TPY or more (*see* Paragraph 12.c (Vapor Control System Verification)) | May 31, 2015 |
| Semi-Annual Report;<br><br>End of Phase Report for Tank Systems with Actual Uncontrolled Annual VOC Emissions of 50 TPY or more;<br><br>Certification of Completion Report for Tank Systems included in the Cross-Section Sampling Analysis (due July 31, 2015; *see* Paragraph 12.c  (Vapor Control System Verification));<br><br>First PRV and thief hatch summary report (*see* Paragraph 15.a (Evaluation of PRVs and Thief Hatches)) | July 30, 2015 |
| Semi-Annual Report;<br><br>End of Phase Report for Tank Systems included in the Cross-Section Sampling Analysis;<br><br>Certification of Completion Report for Tank Systems in Group I (*see* Paragraph 12.c (Vapor Control System Verification)) | January 30, 2016 |
| Semi-Annual Report;<br><br>End of Phase Report for Tank Systems in Group I | July 30, 2016 |
| Semi-Annual Report;<br><br>Certification of Completion Report for Tank Systems in Group II (*see* Paragraph 12.c (Vapor Control System Verification)) | January 30, 2017 |
| First Draft Report from Third-Party Auditor (*see* Paragraph 20.f (Third-Party Verification)) | March 31, 2017 |
| Semi-Annual Report;<br><br>End of Phase Report for Tank Systems in Group II;<br><br>Certification of Completion Report for Tank Systems in Group III (due July 31, 2017; *see* Paragraph 12.c (Vapor Control System Verification)) | July 30, 2017 |
| Semi-Annual Report;<br><br>End of Phase Report for Tank Systems in Group III; | January 30, 2018 |

| Report(s) | Deadline for Submitting Report(s) |
|---|---|
| Second PRV and thief hatch summary report (*see* Paragraph 15.b (Evaluation of PRVs and Thief Hatches)) | |
| Semi-Annual Report | July 30, 2018 and continuing every 6 months until termination of the Decree |
| Second Draft Report from Third-Party Auditor (*see* Paragraph 20.f (Third-Party Verification)) | March 31, 2019 |

61.     If Noble violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Noble shall notify the United States and the State in accordance with the requirements of Section XVII (Notices) of such violation and its likely duration, in writing, within ten working days of the day Noble first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Noble shall so state in the report.  Noble shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day Noble becomes aware of the cause of the violation.  Nothing in this Paragraph or Paragraph 62 relieves Noble of its obligation to provide the notice required by Section XII (Force Majeure).

62.     Whenever any event affecting Noble's operations or Noble's performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, Noble shall comply with any applicable federal and state or local laws and, in addition, shall notify EPA and the State as per Section XVII (Notices) orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Noble first knew of

55

the violation or event.  This notice requirement is in addition to the requirement to provide notice of a violation of this Decree set forth in Paragraph 61.

63.     Each report submitted by Noble under this Section, and each Certification of Completion Report submitted pursuant to the requirements of Paragraph 12.c (Vapor Control System Verification), shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency notifications where compliance would be impractical.

64.     The reporting requirements of this Consent Decree do not relieve Noble of any reporting obligations required by the Act or the Colorado Act, or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

65.     Any information provided pursuant to this Consent Decree may be used by the United States or the State in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## XI.     STIPULATED PENALTIES

66.     Noble shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section XII (Force Majeure), or reduced or waived by one or both of the Plaintiffs pursuant to Paragraph 72 of the

Decree.  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

     a.      <u>Compliance Requirements</u>.

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| Failure to complete sampling, QA/QC assessment, and/or review of analytical results as required by Paragraph 7 (Cross-Section Sampling Analysis) | $2,000 per day for the first 15 days of noncompliance; $5,000 per day thereafter. |
| Failure to develop a written Modeling Guideline as required by Paragraph 8 (Development of a Modeling Guideline) | $1,000 per day for the first 15 days of noncompliance; $2,500 per day from the 16th to 30th days of noncompliance; and $5,000 per day thereafter. |
| Failure to complete an Engineering Evaluation for a Tank System as required by Paragraph 10 (Vapor Control System Engineering Evaluation) | For each Tank System unless associated Well Production Operations temporarily shut-in as required by Paragraph 10.b: $1,000 per day per violation for the first 15 days of noncompliance; $2,500 per day per violation from the 16th to 30th days of noncompliance; and $5,000 per day per violation thereafter. |
| Failure to complete modifications for a Tank System as required by Paragraph 11 (Vapor Control System Modification) | For each Tank System unless associated Well Production Operations temporarily shut-in as required by Paragraph 10.b: $1,000 per day per violation for the first 15 days of noncompliance; $3,000 per day per violation from the 16th to 30th days of noncompliance; and $9,000 per day per violation thereafter. |

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| Failure to conduct an IR Camera Inspection of a Tank System as required by Paragraph 12.a (Vapor Control System Verification) | $500 per day per violation for the first 15 days of noncompliance; $1,000 per day per violation from the 16th to 30th days of noncompliance; and $2,000 per day per violation thereafter. |
| Failure to complete and submit a Certification of Completion Report as required by Paragraph 12.c (Vapor Control System Verification) | $500 per day for the first 15 days of noncompliance; $2,500 per day from the 16th to 30th days of noncompliance; and $5,000 per day thereafter. |
| Failure to comply with the requirements of Paragraph 14 (AIRS Identification Numbers) | $250 per day per violation for the first 30 days of noncompliance; $1,000 per day per violation thereafter. |
| Failure to submit information as required by Paragraphs 15.a and 15.b (Evaluation of PRVs and Thief Hatches) | $250 per day for the first 30 days of noncompliance; $1,000 per day thereafter. |
| Failure to complete the evaluation of PRVs and thief hatches at an AIRS Tank as required by Paragraph 15 and/or take the actions required by Paragraphs 15.c and 15.d (Evaluation of PRVs and Thief Hatches) | $500 per day per AIRS Tank for the first 30 days of noncompliance; $2,500 per day per AIRS Tank thereafter. |
| Failure to implement a DI/PM program at each Tank System as required by Paragraph 16 (Directed Inspection and Preventative Maintenance Program) | $500 per day per Tank System for the first 30 days of noncompliance; $2,500 per day per Tank System thereafter. |
| Failure to conduct Tank System inspections as required by Paragraph 17 (Periodic Inspections and Monitoring) | $500 per day per violation for the first 30 days of noncompliance; $2,500 per day per violation thereafter. |
| Failure to maintain one or more logs documenting Tank System inspection information as required by Paragraph 17.c (Periodic Inspections and Monitoring) | $500 per day for the first 30 days of noncompliance; $2,500 per day thereafter. |
| Failure to complete all necessary corrective actions or temporarily shut-in Well Production Operations as required by Paragraph 18.a (Reliable Information, Investigation, and Corrective Action) | $5,000 per day per Tank System for the first 15 days of noncompliance; $10,000 per day per Tank System from the 16th to 30th days of |

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| | noncompliance; and $20,000 per day per Tank System thereafter. |
| Failure to comply with the requirements of Paragraphs 18.b, 18.c, or 18.d (Reliable Information, Investigation, and Corrective Action) | $250 per day per violation for the first 30 days of noncompliance; $1,000 per day per violation thereafter. |
| Failure to provide notification to EPA and CDPHE of Noble's recommended consultant and the proposed audit work plan as required by Paragraph 20.b (Third-Party Verification). | $250 per day for the first 30 days of noncompliance; $1,000 per day thereafter. |
| Impeding an Auditor's ability to complete the document review and IR Camera Inspections as required by Paragraph 20 (Third-Party Verification). | $1,000 per day for the first 15 days of noncompliance; $2,500 per day from the 16th to 30th day of noncompliance; and $5,000 per day thereafter. |
| Failure to complete a VCS Root Cause Analysis and/or identify appropriate response actions as required by Paragraph 20.e (Third-Party Verification). | $1,000 per day for the first 30 days of noncompliance; and $2,500 per day thereafter. |
| Failure to equip Tank Systems with pressure monitors in accordance with the requirements of Paragraph 21(Tank Pressure Monitoring) | $500 per day per Tank System for the first 30 days of noncompliance; and $1,000 per day per Tank System thereafter. |
| Failure to conduct a site investigation or VCS Root Cause Analysis in accordance with the requirements of Paragraph 21.c (Tank Pressure Monitoring). | $250 per day per Tank System for the first 15 days of noncompliance; and $500 per day per Tank System thereafter. |

b.     Environmental Mitigation Projects.

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| Failure to undertake and complete any of the Environmental Mitigation Projects in compliance with Section VI and Appendix C to this Decree | $1,000 per day per violation for the first 30 days of noncompliance; $5,000 per day per violation thereafter |

    c.      <u>SEPs</u>.

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| Failure to undertake and complete any of the Supplemental Environmental Projects in compliance with Section VIII (Supplemental Environmental Projects) and Appendix D to this Decree | $1,000 per day per violation for the first 30 days of noncompliance; $5,000 per day per violation thereafter |

    d.      <u>Periodic Reports</u>.

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| Failure to submit a Semi-Annual Report as required by Paragraph 58 | $1,000 per day for the first 30 days of noncompliance; and $2,500 per day thereafter. |
| Failure to submit an End of Phase Report as required by Paragraph 59 (End of Phase Reports) | $1,000 per day for the first 30 days of noncompliance; and $2,500 per day thereafter. |

67.    <u>Late Payment of Civil Penalty</u>.  If Noble fails to pay the civil penalty required to be paid under Section VII (Civil Penalty) when due, Noble shall pay a stipulated penalty of $10,000 per day for each day that the payment is late to the United States, and a stipulated penalty of $10,000 per day for each day that the payment is late to the State.  Late payment of the civil penalty shall be made in accordance with Section VII (Civil Penalty).  Stipulated penalties for late payment of the civil penalty shall be paid in accordance with Paragraphs 68, 69, 70, and 71 below.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree, or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Section VII (Civil Penalty).

68.    Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue

to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

69.     Noble shall pay stipulated penalties to the United States and the State within 30 days of a written demand by either the United States or the State, unless Noble invokes the dispute resolution procedures under Section XIII (Dispute Resolution) within the 30-day period. Except for stipulated penalties attributable to late payment of civil penalty, Noble shall pay 50% of the total stipulated penalty amount due to the United States and 50% to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

70.     Stipulated penalties shall continue to accrue as provided in Paragraph 68, during any Dispute Resolution, but need not be paid until:

a.      If the dispute is resolved by agreement or by a decision of EPA or the State that is not appealed to the Court, Noble shall pay accrued penalties agreed to or determined to be owing, together with interest, to the United States and the State within 30 days of the effective date of the agreement or the receipt of EPA's or the State's decision or order;

b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Noble shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in subparagraph c, below; or

      c.      If any Party appeals the District Court's decision, Noble shall pay all

accrued penalties determined to be owing, together with interest, within 15

days of receiving the final appellate court decision.

71.     If Noble fails to pay stipulated penalties within 30 days after receiving the United

States' or the State's written demand as required by Paragraph 69, Noble shall pay interest on

unpaid stipulated penalties, as provided for in 28 U.S.C. § 1961, as follows: (i) if Noble has

timely invoked dispute resolution such that the obligation to pay stipulated penalties has been

stayed pending the outcome of dispute resolution, interest accrues from the date stipulated

penalties are due pursuant to Paragraph 68 until the date of payment; and (ii) if Noble does not

timely invoke dispute resolution, interest accrues from Noble's receipt of the written demand

pursuant to Paragraph 69 until the date of payment. Nothing in this Paragraph limits the United

States or the State from seeking any remedy otherwise provided by law for Noble's failure to pay

any stipulated penalties or interest.

72.     Either the United States or the State may, in the unreviewable exercise of their

respective discretion, reduce or waive stipulated penalties otherwise due it under this Consent

Decree. The determination by one Plaintiff not to seek stipulated penalties, or subsequently to

waive or reduce the amount it seeks, shall not preclude the other Plaintiff from seeking the full

amount of the stipulated penalties owing.

73.     <u>Obligations Prior to the Effective Date</u>. Upon the Effective Date, the stipulated

penalty provisions of this Consent Decree shall be retroactively enforceable with regard to any

and all violations of Paragraph 10 (Vapor Control System Engineering Evaluation) and

Paragraph 11 (Vapor Control System Modification) that have occurred after the date of lodging

and prior to the Effective Date, provided that stipulated penalties that may have accrued after the

date of lodging and prior to the Effective Date may not be collected unless and until this Decree is entered by the Court.

74. Noble shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 33 (Federal Payment Instructions), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Noble shall pay stipulated penalties owing to the State in the manner set forth and with the confirmation notices required by Paragraph 34 (State Payment Instructions) except that the transmittal letter shall state the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

75. Noble shall not deduct stipulated penalties paid under this Section in calculating its state and federal income tax.

76. Subject to the provisions of Section XV (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Noble's violation of this Decree or applicable law. Where a violation of this Decree is also a violation of relevant statutory or regulatory requirements, Noble shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation under the applicable federal or State requirement.

## XII. FORCE MAJEURE

77. "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Noble, of any entity controlled by Noble, or of Noble's contractors, that delays or prevents the performance of any obligation under this Decree despite

Noble's best efforts to fulfill the obligation.  The requirement that Noble exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (i) as it is occurring and (ii) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force majeure" does not include Noble's financial inability to perform any obligation under this Decree.

78.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, for which Noble intends or may intend to assert a claim of force majeure, Noble shall provide notice orally or by electronic or facsimile transmission to EPA and CDPHE as provided in Section XVII (Notices), within 72 hours of when Noble first knew that the event might cause a delay.  Within ten days thereafter, Noble shall provide in writing to EPA and CDPHE (i) an explanation and description of the reasons for the delay; (ii) the anticipated duration of the delay; (iii) all actions taken or to be taken to prevent or minimize the delay; (iv) a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and (v) Noble's rationale for attributing such delay to a force majeure event if it intends to assert such a claim.  Noble shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Noble will be deemed to know of any circumstance of which Noble, any entity controlled by Noble, or Noble's contractors knew or should have known.  Failure to comply with the above requirements regarding an event precludes Noble from asserting any claim of force majeure regarding that event, provided, however, that if EPA, after reasonable opportunity for review and comment by CDPHE, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 77 and whether Noble has exercised best efforts under

Paragraph 77, EPA may, in its unreviewable discretion, excuse in writing Noble's failure to submit timely notices under this Paragraph.

79.     If EPA, after a reasonable opportunity for review and comment by CDPHE, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by the CDPHE, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure does not, of itself, extend the time for performance of any other obligation.  EPA will notify Noble in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

80.     If EPA, after a reasonable opportunity for review and comment by CDPHE, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Noble in writing of its decision.

81.     If Noble elects to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution), it shall do so no later than 30 days after receipt of EPA's notice.  In any such proceeding, Noble bears the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Noble complied with the requirements of Paragraphs 77 and 78.  If Noble carries this burden, the delay at issue will be deemed not to be a violation by Noble of the affected obligation of this Consent Decree identified to EPA and the Court.

### XIII.   DISPUTE RESOLUTION

82.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section are the exclusive mechanism to resolve disputes regarding this Decree, provided that the Party invoking such procedure has first made a good faith attempt to resolve the matter with the other Party.

83.     The dispute resolution procedure required herein shall be invoked by one Party giving written notice to the other Party advising of a dispute pursuant to this Section.  The notice shall describe the nature of the dispute and shall state the noticing Party's position with regard to such dispute.  The Party receiving such a notice shall acknowledge receipt of the notice, and the Parties in dispute shall expeditiously schedule a meeting to discuss the dispute informally not later than 14 days following receipt of such notice.

84.     Disputes submitted to dispute resolution under this Section shall, in the first instance, be the subject of informal negotiations among the disputing Parties.  Such period of informal negotiations shall not extend beyond 30 days from the date of the first meeting among the Parties' representatives unless they agree in writing to shorten or extend this period.

85.     If the Parties are unable to reach agreement during the informal negotiation period, EPA, after consultation with CDPHE, shall provide Noble with a written summary of its position regarding the dispute.  The written position provided by EPA shall be considered binding unless, within 45 days thereafter, Noble seeks judicial resolution of the dispute by filing a petition with this Court.  The United States may respond to the petition within 45 days of filing.

86.     Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set forth in this Section may be shortened upon motion of one of the Parties to the dispute.

87.   This Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

88.   As part of the resolution of any dispute under this Section, in appropriate circumstances the Parties may agree, or this Court may order, an extension or modification of the schedule for completion of the activities required under this Consent Decree to account for the delay that occurred as a result of dispute resolution.  Noble shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule, provided that Noble shall not be precluded from asserting that a force majeure event has caused or may cause delay in complying with the extended or modified schedule.

89.   The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes.  In their initial filings with the Court under Paragraph 85, the Parties shall state their respective positions as to the applicable standard of law for resolving the particular dispute.

## XIV.   INFORMATION COLLECTION AND RETENTION

90.   The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.   Monitor the progress of activities required under this Decree;

b.   Verify any data or information submitted to the United States or the State in accordance with the terms of this Decree;

c.   Obtain samples and, upon request, splits or duplicates of any samples taken by Noble or its representatives, contractors, or consultants;

67

d.      Obtain documentary evidence, including photographs and similar data; and

e.      Assess Noble's compliance with this Decree.

91.      Upon request, Noble shall provide EPA, CDPHE, or their authorized representatives, splits or duplicates of any samples taken by Noble at a Tank System or associated equipment.  Upon request, EPA and CDPHE shall provide Noble splits or duplicates of any samples taken by EPA, CDPHE, or their authorized representatives.

92.      Except for data recorded by pressure monitors installed pursuant to Paragraph 21 (Tank Pressure Monitoring), until two years after the termination of this Consent Decree, Noble shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) (hereinafter referred to as "Records") in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that directly relate to Noble's performance of its obligations under this Decree.  This information-retention requirement applies regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, Noble shall provide copies of any Records required to be maintained under this Paragraph.  Noble shall retain the data recorded by any pressure monitors required pursuant to Paragraph 21 (Tank Pressure Monitoring) for two years from the date of recording, except that Noble shall keep any such data until two years after termination if Noble was required to keep the data pursuant to Subparagraph 21.d (Tank Pressure Monitoring).

93.      At the conclusion of the information-retention period provided in Paragraph 92, Noble shall notify the United States and the State at least 90 days prior to the destruction of any

Records subject to the requirements of Paragraph 92 and, upon request by the United States or the State, Noble shall deliver any such Records to EPA or CDPHE.

94.     Privileged and Business Confidential Documents.  Noble may assert that information and documents required to be provided under this Consent Decree are:  (i) subject to legal privileges or protection; or (ii) Confidential Business Information under 40 C.F.R. Part 2 and 24-72-204, C.R.S. and such provisions shall control the process by which any such claims are evaluated.

95.     Noble may make no claim of privilege or protection (other than claims of Confidential Business Information) regarding any Records that Noble is required to create or generate pursuant to this Consent Decree.

96.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Noble to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XV.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

97.     This Consent Decree resolves the civil and administrative claims that the United States and/or the State may have against Noble for the following violations at the Tank Systems listed in Appendix A, including associated Vapor Control Systems, through the date of lodging:

      a.     Failure to achieve the system-wide emissions reductions required by SIP-Approved Reg. 7, Sec. XII.A.2 and State-Approved Reg. 7, Sec. XII.D.2, including, but not limited to, Noble's self-disclosure regarding the failure

to meet the system-wide emissions reduction requirements for the 2014

Ozone Season;

b.   Failure to comply with the requirement of SIP-Approved Reg. 7, Sec.

XII.D.2.a and State-Approved Reg. 7, Sec. XII.C.1.a that:

(1)   "All air pollution control equipment required by this Section XII

shall be operated and maintained consistent with manufacturer

specifications and good engineering and maintenance practices.

The owner or operator shall keep manufacturer specifications on

file"; and

(2)   "[A]ll such air pollution control equipment shall be adequately

designed and sized to achieve the control efficiency rates required

by this Section XII and to handle reasonably foreseeable

fluctuations in emissions of volatile organic compounds.

Fluctuations in emissions that occur when the separator dumps into

the tank are reasonably foreseeable";

c.   Failure to comply with the requirement of SIP-Approved Reg. 7, Sec.

XII.D.2.b and State-Approved Reg. 7, Sec. XII.C.1.b, that all "condensate

collection, storage, processing and handling operations, regardless of size,

shall be designed, operated, and maintained so as to minimize leakage of

volatile organic compounds to the atmosphere to the maximum extent

practicable;"

d.   Failure to mark Condensate tanks, and devices controlling emissions from

Condensate tanks, with AIRS identification numbers, as required by SIP-

Approved Reg. 7, Sec. XII.A.10 and A.11 and State-Approved Reg. 7, Sec. XII.F.1 and F.2;

e.     Failure to achieve a control efficiency of 95% from any vapor recovery unit or combustion device as required by SIP-Approved Reg. 7, Sec. XII.A.7 and State-Approved Reg. 7, Sec. XII.C.1.c or properly install, operate and maintain air pollution control equipment as required by SIP-Approved Reg. 7, Sec. XII.A.4.h and State-Approved Reg. 7, Sec. XII.C.1.c;

f.     Failure to comply with any of the recordkeeping and reporting requirements under SIP-Approved Reg. 7, Sec. XII.A.4 and A.5 and State-Approved Reg. 7, Sec. XII.F, including, but not limited to, violations related to unreported air pollution control equipment downtime;

g.     Failure to comply with SIP-Approved Reg. 7, Sec. XII.D.2.c and State-Approved Reg. 7, Sec. XII.C.1.d to have no visible emissions from a flare or other combustion device and have such devices designed so that an observer can determine whether it is properly operating;

h.     Failure to comply with any of the monitoring requirements under SIP-Approved Reg. 7, Sec. XII.A.3 and State-Approved Reg. 7, Sec. XII.E; and

i.     Failure to properly report any information to the United States or the State with respect to any of the violations resolved in this Section XV (Effect of Settlement/Reservation of Rights) of the Consent Decree.

98.     This Consent Decree further resolves the civil and administrative claims that the State may have against Noble relating to the following issues at the Tank Systems listed in Appendix A, including associated Vapor Control Systems, through the date of lodging:

      a.     All observations related to equipment leaks observed by audible, visual, and olfactory inspection methods;

      b.     All observations related to equipment leaks observed by infrared camera;

      c.     All observations related to the open thief hatch identified in I-NOV Jan. 30, 2015; 123-8988; and

      d.     Any failure to properly design, operate, or maintain a Tank System, including associated Vapor Control Systems, or achieve emission reductions from such Tank System as required by State-Approved Reg. 7.

99.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraphs 97 and 98.  This Consent Decree does not limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraphs 97 and 98.  The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Tank Systems, whether related to the violations addressed in this Decree or otherwise.

100.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to the Tank Systems or Noble's violations, Noble shall not assert, and may not maintain, any defense or

claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 97 and 98.

101.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Noble is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Noble's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State do not, by their consent to the entry of this Decree, warrant or aver in any manner that Noble's compliance with any aspect of this Decree will result in compliance with provisions of the Act, the Colorado Act, the Colorado SIP, Regulation 7, or with any other provisions of federal, State, or local laws, regulations, or permits.

102.    This Consent Decree does not limit or affect the rights of Noble or of the United States or the State against any third parties, not party to this Decree, nor does it limit the rights of third parties, not party to this Decree, against Noble, except as otherwise provided by law.

103.    This Consent Decree does not create rights in, or grant any cause of action to, any third party not party to this Decree.

## XVI.   COSTS

104.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including

attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any

stipulated penalties due but not paid by Noble.

## XVII.  NOTICES

105.    Unless otherwise specified in this Consent Decree, whenever notifications,

submissions, or communications are required by this Decree, they shall be made electronically,

unless otherwise requested, and addressed as follows:

| | |
|---|---|
| As to the United States by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-10811 |
| As to the United States by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-2-1-10811 |
| As to EPA: | Director, Air Enforcement Division<br>Office of Civil Enforcement<br>USEPA Headquarters, MC 2242A<br>1200 Pennsylvania Ave., NW<br>Washington, D.C. 20460 |
| | Director, Air & Toxics Technical Enforcement<br>Office of Enforcement, Compliance &<br>Environmental Justice<br>Environmental Protection Agency, Region 8<br>1595 Wynkoop Street<br>Denver, CO  80202 |
| As to the State of Colorado: | First Assistant Attorney General<br>Air Quality Unit<br>Colorado Attorney General's Office<br>1300 Broadway, 7th Floor<br>Denver, CO 80203 |

As to CDPHE:

Field Services Program Manager
Colorado Department of Public Health and
Environment
Air Pollution Control Division
APCD – SSP – B1
4300 Cherry Creek Drive South
Denver, CO 80246-1530

As to Noble:

Vice President Environmental Health and Safety
1001 Noble Energy Way
Houston, TX  77070

Counsel
1625 Broadway, Suite 2200
Denver, CO  80202

106.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

107.     Notices submitted pursuant to this Section shall be deemed submitted upon

electronic transmission or mailing, unless otherwise provided in this Consent Decree or by

mutual agreement of the Parties in writing.

### XVIII. SALES OR TRANSFERS OF OWNERSHIP OR OPERATIONAL INTERESTS

108.     No sale or transfer of ownership or operation of any Tank System or associated

well production assets by Noble, whether in compliance with the terms of this Section XVIII

(Sales or Transfers of Operational or Ownership Interests) or otherwise, shall relieve Noble from

its obligation to ensure the terms of this Consent Decree are implemented, unless:  (a) the buyer

or transferee agrees to undertake the requirements of this Decree applicable to the Tank System

or associated well production assets and be substituted for Noble as a Party to this Decree and be

bound by its terms as provided by Paragraph 111; (b) the United State and the State consents to

relieve Noble of its obligations; and (c) the Court agrees to the substitution.  If Noble proposes to

sell or transfer an ownership or operational interest of any Tank System or associated well

production assets to a third party unaffiliated with Noble that is not a Controlled Sale, and the Decree obligations have not been terminated as to such Tank System or associated well production assets pursuant to Paragraph 117 (Termination as to Specific Tank System(s)), Noble shall advise the third party in writing of the existence of this Decree prior to such sale or transfer and shall send a copy of such written notification to the United States and the State pursuant to Section XVII (Notices) at least 60 days before such proposed sale or transfer.  Noble may enter into a Controlled Sale of any Tank System or associated well production assets without providing such notice to the unaffiliated third party, the United States, and the State.

109.    With the exception of Controlled Sales which are excluded from the requirements of this Paragraph, no sale or transfer of an ownership or operational interest of any Tank System or associated well production assets shall take place before the third party, the United States, and the State have executed, and the Court has approved, a modification pursuant to Section XXI (Modification) of this Consent Decree making the third party a party to this Decree and jointly and severally liable with Noble for all requirements of this Decree that may be applicable to the transferred or purchased Tank Systems or associated well production assets.

110.    This Consent Decree shall not be construed to impede the transfer of an operational or ownership interest from Noble to a third party unaffiliated with Noble so long as the requirements of this Decree are met.  This Decree shall not be construed to prohibit a contractual allocation – as between Noble and a third party – of the burdens of compliance with this Decree provided that Noble and such third party shall remain jointly and severally liable for the obligations of this Decree applicable to the transferred or purchased Tank Systems or associated well production assets.

111.     If the United States and the State agree, Plaintiffs, Noble and the third party that has become a party to this Consent Decree pursuant to Paragraph 109 may execute a modification that relieves Noble of its liability under this Decree for, and makes the third party liable for, all obligations and liabilities applicable to the purchased or transferred Tank Systems or associated well production assets.  Notwithstanding the foregoing, however, Noble may not assign, and may not be released from, any obligation under this Decree that is not specific to the purchased or transferred Tank Systems or associated well production assets, including the obligations set forth in Sections VI (Environmental Mitigation Projects), VII (Civil Penalty), VIII (Supplemental Environmental Projects), and IX (State-Only Supplemental Environmental Projects).  Noble may propose, and the United States and State may agree, to restrict the scope of joint and several liability of any purchaser or transferee of any Tank Systems or associated well production assets for any obligations of this Decree that are not specific to the transferred or purchased Tank Systems or associated well production assets, to the extent that such obligations may be adequately separated in an enforceable manner.

112.     Effect of Plug and Abandonment.  The permanent plug and abandonment of a well shall be deemed to satisfy all requirements of this Consent Decree applicable to the well and associated equipment no longer servicing wells that have not been plugged and abandoned on and after the later of: (i) Noble's submission of and approval by Colorado Oil and Gas Conservation Commission's ("COGCC") of the initial Form 6; (ii) Noble's submission of the COGCC's subsequent Form 6; and (iii) Noble's notice of cancellation of an Emissions Permit/APEN Cancellation Request to CDPHE.  Once Noble has decided to permanently plug and abandon a well under this Paragraph, no Well Production Operations shall be permissible. Noble shall maintain copies of all documentation required by this Paragraph for inspection and

review by EPA and CDPHE. In each Semi-Annual Report, Noble shall update Appendix A to reflect any wells and associated Tank Systems that have been permanently plugged and abandoned. Nothing herein shall preclude Noble from reusing any equipment from a plugged and abandoned well.

### XIX. EFFECTIVE DATE

113. The Effective Date of this Consent Decree is the date upon which the approval of the Decree is recorded on the Court's docket; provided, however, that Noble hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Decree before entry, or the Court declines to enter the Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date terminates.

### XX. RETENTION OF JURISDICTION

114. The Court retains jurisdiction over this case until termination of this Consent Decree pursuant to Section XXII (Termination) for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XIII (Dispute Resolution) and XXI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

### XXI. MODIFICATION

115. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it is effective only upon approval by the Court.

116.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XIII (Dispute Resolution). The Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXII. TERMINATION

117.    <u>Termination as to Specific Tank System(s)</u>.  Noble may seek consent to terminate the requirements of this Consent Decree with respect to Tank System(s) which have completed the Engineering Evaluation and any necessary modifications and which are to be transferred entirely from Noble's operational control.

      a.    Such requests for termination shall be provided to the United States and the State, in writing, and contain the following information:

        (1)    the date a certification of completion report was submitted for the Tank System(s); or if such report has not been submitted, Noble shall submit a certification of completion report for the Tank System(s) in accordance with the requirements in Paragraph 12 (Vapor Control System Verification);

        (2)    whether each Tank System has a tank pressure monitor pursuant to the requirements of Paragraph 21 (Tank Pressure Monitoring) and if so the tank pressure monitor shall be moved to another Tank System in the same Line Pressure Grouping and in the same uncontrolled emissions grouping, and Noble will maintain records identifying the Tank System to which the tank pressure monitor was moved; and

(3)    whether each Tank System is included in the Pressurized Liquids and Analysis Study, and if so an alternate Tank System shall be identified and included in the study to the extent appropriate.

b.    Until such time as the United States and the State consent to Noble's request for termination, Noble's obligations under this Consent Decree shall remain in effect as to such Tank System(s). Such consent shall not be unreasonably withheld.

c.    Any individual request for termination shall not include more than five percent (5%) of all Tank Systems subject to this Consent Decree and, under no circumstances, may Noble seek terminations pursuant to this Paragraph involving more than fifteen percent (15%) of all Tank Systems subject to this Consent Decree.

118.    After Noble has completed the requirements of Section IV (Injunctive Relief), Section VI (Environmental Mitigation Projects), Section VIII (Supplemental Environmental Projects), and Section IX (State-Only Supplemental Environmental Projects) and has paid the civil penalty and any accrued stipulated penalties not waived or reduced by the United States or the State pursuant to Paragraph 72, Noble may send to the United States and the State a Request for Termination, which shall be certified in accordance with Paragraph 63, stating that Noble has satisfied those requirements, together with all necessary supporting documentation.

119.    Following receipt by the United States and the State of Noble's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Noble has satisfactorily complied with the requirements for termination of this Consent Decree, including documentation of compliance with and

completion of each requirement.  If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

120.    If the United States, after consultation with the State, does not agree that the Consent Decree may be terminated, Noble may invoke Dispute Resolution under Section XIII (Dispute Resolution).  However, Noble shall not seek Dispute Resolution of any dispute regarding termination until 60 days after service of its Request for Termination.

## XXIII. PUBLIC PARTICIPATION

121.    This Consent Decree will be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate.  Noble consents to entry of this Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Noble in writing that it no longer supports entry of the Decree.

## XXIV. SIGNATORIES/SERVICE

122.    Each undersigned representative of Noble, the Director, Air Pollution Control Division, CDPHE, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

123.    This Consent Decree may be signed in counterparts, and its validity may not be challenged on that basis.

124.    Noble shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court, including, but not limited to, service of a summons. Defendant need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Decree.

## XXV. INTEGRATION/HEADINGS

125.    This Consent Decree and its Appendices constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Decree.

126.    Headings to the Sections and subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXVI. FINAL JUDGMENT

127.    Upon approval and entry of this Consent Decree by the Court, this Decree constitutes a final judgment of the Court as to the United States, the State, and Noble.

## XXVII.    APPENDICES

128.    The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the List of AIRS Tanks/Tank Systems;

"Appendix B" is the Standard Operating Procedure – Pressurized Liquids and Gas Sampling and Analysis Plan;

"Appendix C" is Environmental Mitigation Projects; and

"Appendix D" is Pressurized Hydrocarbon Liquids Sampling and Analysis Study – Preliminary Study Parameters.

Dated and entered this 2 day of ___June___, 2015

_____
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

_____
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____
Date

JEREL ("JERRY") ELLINGTON
MARK C. ELMER
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Denver, CO 80202

84

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

4/20/15

Date

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

4/16/15

Date

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

85

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

_4/9/15_
Date

SUZANNE J. BOHAN
Assistant Regional Administrator
Office of Enforcement, Compliance and Environmental
Justice
U.S. Environmental Protection Agency, Region 8

_4-6-15_
Date

VIRGINIA SORRELL
Attorney
U.S. Environmental Protection Agency, Region 8

FOR THE STATE OF COLORADO:

4 - 6 -15
Date

THOMAS A. ROAN
First Assistant Attorney General
Natural Resources and Environmental Section
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203

FOR THE COLORADO DEPARTMENT OF PUBLIC
HEALTH AND ENVIRONMENT:

7 April 2015
Date

WILLIAM C. ALLISON V
Director, Air Pollution Control Division
Colorado Department of Public Health & Environment
APCD-ADM-B1
4300 Cherry Creek Drive South
Denver, CO 80246

FOR NOBLE ENERGY, INC.:

_____

Date

SUSAN M. CUNNINGHAM
Executive Vice President

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 1 | SCHNEIDER USX II31-25D | 123-9799 | 415826128 | | >= 233 |
| 1 | SCHNEIDER USX II 31-11D, 14 | 123-6381 | 11716600 | | >= 233 |
| 1 | SCHNEIDER USX II 31-12PD, 13D | 123-9800 | 415826212 | 44.43 | >= 233 |
| 2 | HKS 6-25 | 123-4112 | 415779624 | | >= 233 |
| 2 | HKS 6-22, 23 | 123-7412 | 415779623 | 3.94 | >= 233 |
| 3 | TJADEN 36-11, 14 | 123-6342 | 415779795 | | >= 233 |
| 3 | WADSWORTH 36-12, 13, 15 | 123-6825 | 415779818 | 8.69 | >= 233 |
| 4 | CABALA RANCH & EXPL 24-42 | 123-8841 | 415779822 | | < 186 |
| 4 | MOUNTAIN VIEW 24-41 | 123-7210 | 415779851 | 6.95 | < 186 |
| 5 | DRAKE PC MM14-15D | 123-9675 | 415820521 | | >= 186, < 233 |
| 5 | DRAKE PC MM14-08D | 123-9674 | 415820520 | 16.03 | >= 186, < 233 |
| 6 | STATE 7-36,M 36-5 | 123-5725 | 90088000 | | >= 186, < 233 |
| 6 | STATE 6,8-36,M 36-3 | 123-3542 | 10088000 | 12.40 | >= 186, < 233 |
| 7 | SWANSON 28-22, 23 | 123-5566 | 415779771 | | >= 233 |
| 7 | SWANSON OIL 28-21, 24; 29-11, 14 | 123-3089 | 415779961 | 11.61 | >= 233 |
| 8 | BUXMAN 28-12 | 123-9112 | 415790432 | | >= 233 |
| 8 | BUXMAN 28-15 | 123-9110 | 415790546 | 9.77 | >= 233 |
| 9 | STATE 1-36,M 36-13,25 | 123-5792 | 90087800 | | >= 233 |
| 9 | STATE 2,3-36,M 36-11 | 123-3484 | 10087800 | 15.36 | >= 233 |
| 10 | STATE  4-36,M 36-15 | 123-3604 | 10087900 | | >= 233 |
| 10 | STATE 5-36,M 36-7,9 | 123-6480 | 90087900 | 8.73 | >= 233 |
| 11 | MOBILE PREMIX I 35-4,19 | 123-5564 | 11538300 | | < 186 |
| 11 | MOBILE PREMIX 3-35,I 35-6,Flathead I 35-12 | 123-5563 | 10089300 | 14.66 | < 186 |
| 12 | MOBILE PREMIX 4-35,I 35-17 | 123-4943 | 10089400 | | >= 233 |
| 12 | MOBILE PREMIX I 35-1,8 | 123-6182 | 11537800 | | >= 233 |
| 12 | MOBILE PREMIX I 35-10,23 | 123-6461 | 11538200 | 49.94 | >= 233 |
| 13 | DUKE J 4-33 | 123-6502 | 81715400 | | >= 233 |
| 13 | DUKE J 4-12,13 | 123-6505 | 91715400 | | >= 233 |
| 13 | DUKE USX J 5-9,16 | 123-6493 | 11719800 | | >= 233 |
| 13 | DUKE J 4-11,14,25 | 123-6490 | 11715400 | 98.62 | >= 233 |
| 14 | JOHNSON 2-23, 24 | 123-4429 | 415779889 | | >= 186, < 233 |
| 14 | RUDOLPH 2-31, 32 | 123-9278 | 415812253 | 17.40 | >= 186, < 233 |
| 15 | BAUER I 34-20 | 123-5374 | 11522000 | | >= 233 |
| 15 | WILLIAMS 2-34, TENNYSON I 34-19,25 | 123-4456 | 10086900 | 8.91 | >= 233 |
| 16 | MOEN  8-7H6,J 8-10 | 123-3568 | 10779600 | | >= 186, < 233 |
| 16 | MOEN J 8-8,9 | 123-6083 | 90779600 | 17.34 | >= 186, < 233 |
| 17 | AUSTYN J 9-5,19 | 123-5675 | 91533500 | | >= 233 |
| 17 | AUSTYN J 9-3,6 | 123-5674 | 11533500 | 14.64 | >= 233 |
| 18 | BOOTH N25-18D | 123-9210 | 415808774 | | >= 186, < 233 |
| 18 | BOOTH N25-31D | 123-9209 | 415808773 | | >= 186, < 233 |
| 18 | BOOTH N 25-3,4,5,6,19 | 123-2760 | 11307800 | 23.00 | >= 186, < 233 |
| 19 | BLEHM N 26-8 | 123-5676 | 11510100 | | >= 186, < 233 |
| 19 | BLEHM N 26-1,17 | 123-5467 | 11533900 | 16.96 | >= 186, < 233 |
| 20 | BOOTH 25-11/BOOTH 25-14 | 123-3059 | 415779759 | 8.01 | >= 233 |
| 20 | BOOTH 25-15 | 123-7603 | 415790461 | | >= 233 |
| 21 | ROACH N14-22 | 123-7996 | 415736146 | | >= 186, < 233 |
| 21 | RAGAN N 14-1,8 | 123-5639 | 11424900 | | >= 186, < 233 |
| 21 | RAGAN N 14-2,7,17 | 123-2640 | 11360800 | 46.99 | >= 186, < 233 |
| 22 | ARIEL J 7-11,12,14 | 123-2819 | 11470400 | | >= 233 |
| 22 | UPRC 7-4H6,5H6 | 123-3751 | 10815300 | 7.27 | >= 233 |
| 23 | SAMUEL J 7-10 | 123-5091 | 11510600 | | >= 233 |
| 23 | STEPHENS 7-13,14,15 | 123-8875 | 415779918 | 12.95 | >= 233 |
| 24 | GOLDBERG N14-20D | 123-8710 | 415771410 | | >= 186, < 233 |
| 24 | GOLDBERG N 14-11,12,13,14,25 | 123-4385 | 91499500 | 70.91 | >= 186, < 233 |
| 25 | SAMUEL J 7-16,23 | 123-5509 | 91532100 | | >= 186, < 233 |
| 25 | SAMUEL J 7-9,15 | 123-5510 | 11532100 | 16.35 | >= 186, < 233 |
| 26 | ROACH N13-33 | 123-8007 | 415737314 | | >= 186, < 233 |
| 26 | BASS N 14-9,10,16 | 123-2186 | 11462900 | | >= 186, < 233 |
| 26 | ROACH N14-10,15,23 | 123-8004 | 415736267 | | >= 186, < 233 |
| 26 | ROACH N14-18D | 123-8414 | 415736145 | | >= 186, < 233 |
| 26 | ROACH N14-21 | 123-8413 | 415720360 | 56.20 | >= 186, < 233 |
| 27 | PHILLIPS PC N24-31D | 123-9452 | 415812988 | | >= 186, < 233 |
| 27 | PHILLIPS 24-2-20D | 123-9454 | 415813483 | | >= 186, < 233 |
| 27 | PHILLIPS PC N24-29D | 123-9451 | 415812987 | | >= 186, < 233 |
| 27 | Phillips 24-22, 23, Phillips PC N24-19 | 123-3057 | 415779763 | 34.35 | >= 186, < 233 |
| 28 | PHILLIPS 24-3-23 | 123-9511 | 415815017 | | >= 186, < 233 |
| 28 | PHILLIPS 24-3-21 | 123-9510 | 415814059 | | >= 186, < 233 |
| 28 | DL PHILLIPS 24-31/DL PHILLIPS 24-34 | 123-4441 | 415779764 | | >= 186, < 233 |
| 28 | PHILLIPS 24-3-17 | 123-9504 | 415815499 | | >= 186, < 233 |
| 28 | PHILLIPS 1, DL PHILLIPS 24-32, PC N24-25 | 123-8963 | 415779955 | 30.35 | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 29 | PHILLIPS 23-1-17 | 123-9453 | 415813482 | | >= 186, < 233 |
| 29 | PHILLIPS 23-1-20 | 123-9508 | 415814057 | | >= 186, < 233 |
| 29 | PHILLIPS 23-1-21 | 123-9509 | 415814058 | | >= 186, < 233 |
| 29 | PHILLIPS 23-11, 12, 13, 14, PC N23-17 | 123-3053 | 415779941 | 37.03 | >= 186, < 233 |
| 30 | KAMMERZELL J 29-19 | 123-6947 | 415663397 | | < 186 |
| 30 | KAMMERZELL 29-3H6,6H6 | 123-3584 | 10139700 | 6.31 | < 186 |
| 31 | BENSLER J29-27D | 123-8335 | 415751829 | | < 186 |
| 31 | BENSLER J29-18D | 123-8333 | 415751827 | | < 186 |
| 31 | UPV 29- 1H6,2H6,BENSLER J29-17D | 123-3620 | 10825800 | 17.07 | < 186 |
| 32 | IGO FARMS J28-31D | 123-9175 | 415808626 | | >= 186, < 233 |
| 32 | IGO FARMS J28-19D | 123-9168 | 415808283 | | >= 186, < 233 |
| 32 | IGO FARMS J28-32D | 123-9173 | 415808289 | | >= 186, < 233 |
| 32 | IGO FARMS J28-20D | 123-9170 | 415808285 | | >= 186, < 233 |
| 32 | COLTRANE PM J 28-4,5 | 123-3500 | 11312700 | 19.85 | >= 186, < 233 |
| 33 | STEVE J 18-23 | 123-6095 | 91555000 | | >= 186, < 233 |
| 33 | STEVE J 18-15,16 | 123-6102 | 11557300 | | >= 186, < 233 |
| 33 | STEVE J 18-9,10 | 123-6104 | 11555000 | 34.72 | >= 186, < 233 |
| 34 | KORI J 19-10,23,25 | 123-5640 | 91338200 | | >= 186, < 233 |
| 34 | KORI J 19-13,14,15,16 | 123-2641 | 11338200 | | >= 186, < 233 |
| 34 | KORI J 19-9,11,12 | 123-5672 | 81338200 | 20.86 | >= 186, < 233 |
| 35 | CARLSON J 33-31D | 123-7592 | 415698952 | | >= 186, < 233 |
| 35 | CARLSON J 33-30 | 123-7588 | 415697660 | 8.76 | >= 186, < 233 |
| 36 | LUNDVALL J18-22D | 123-8250 | 415750507 | | >= 186, < 233 |
| 36 | LUNDVALL J17-30D | 123-8222 | 415747014 | | >= 186, < 233 |
| 36 | LUNDVALL J18-28D | 123-8227 | 415747020 | | >= 186, < 233 |
| 36 | LUNDVALL J18-18D | 123-8224 | 415747016 | | >= 186, < 233 |
| 36 | LUNDVALL J17-32D | 123-8223 | 415747015 | | >= 186, < 233 |
| 36 | LUNDVALL J18-02D | 123-8308 | 415751171 | | >= 186, < 233 |
| 36 | LUNDVALL J18-21D | 123-8225 | 415747017 | | >= 186, < 233 |
| 36 | LUNDVALL J17-31D | 123-8332 | 415751245 | | >= 186, < 233 |
| 36 | LUNDVALL J18-17D | 123-8307 | 415750875 | | >= 186, < 233 |
| 36 | LUNDVALL J18-27D | 123-8226 | 415747018 | | >= 186, < 233 |
| 36 | LUNDVALL J18-01D,08D | 123-8306 | 415750874 | 46.94 | >= 186, < 233 |
| 37 | LUNDVALL 30-11H6 | 123-1744 | 10141100 | | >= 186, < 233 |
| 37 | LUNDVALL 1-30 | 123-4847 | 10074900 | 5.59 | >= 186, < 233 |
| 38 | BERNHARDT PC J31-30D | 123-9877 | 415826451 | | < 186 |
| 38 | BERNHARDT PC J31-32D | 123-9879 | 415826453 | | < 186 |
| 38 | BERNHARDT PC J31-31D | 123-9878 | 415826452 | | < 186 |
| 38 | UPRC 31-3H6,4H6,BERNHARDT J 31-19 | 123-3508 | 10864300 | 27.09 | < 186 |
| 39 | BERNHARDT J 31-33D | 123-7568 | 415694141 | | < 186 |
| 39 | UPRC 31-12H6,13H6,BERNHARDT J 31-20 | 123-3576 | 10864800 | 7.07 | < 186 |
| 40 | STROH N35-9,16 | 123-4800 | 11372700 | | >= 186, < 233 |
| 40 | STROH O 2-8,1 | 123-4398 | 11505900 | 13.11 | >= 186, < 233 |
| 41 | BOOTH N 25-16,23 | 123-5405 | 91508800 | | < 186 |
| 41 | BOOTH N 25-9,10,15 | 123-5182 | 11508800 | 15.73 | < 186 |
| 42 | BOOTH N 25-11,12 | 123-5406 | 11533600 | | >= 186, < 233 |
| 42 | BOOTH N 25-13,14,25 | 123-5408 | 11533800 | 22.11 | >= 186, < 233 |
| 43 | BERNHARDT STATE PC N36-17 | 123-9376 | 415812937 | | >= 186, < 233 |
| 43 | STATE BERNHARDT 36-12/36-13 | 123-3062 | 415779960 | | >= 186, < 233 |
| 43 | EMC 36-1/EMC 36-2 | 123-3061 | 415779805 | | >= 186, < 233 |
| 43 | BERNHARDT STATE PC N36-27D | 123-9377 | 415812938 | 27.81 | >= 186, < 233 |
| 44 | BOOTH N25-32D | 123-9252 | 415809467 | | >= 186, < 233 |
| 44 | BOOTH N25-33D | 123-9253 | 415809468 | 18.32 | >= 186, < 233 |
| 45 | BOOTH N25-20D | 123-9490 | 415812982 | | < 186 |
| 45 | BOOTH N25-22D | 123-9480 | 415813480 | | < 186 |
| 45 | BOOTH N25-24D | 123-9479 | 415813479 | | < 186 |
| 45 | BOOTH N25-21D | 123-9488 | 415812983 | 21.13 | < 186 |
| 46 | SCHNEIDER STATE 20-36 | 123-4133 | 415860755 | | < 186 |
| 46 | BERNHARDTST10,15-36,SCHNEIDERST9-36,STATEN36-16 | 123-4133 | 415860796 | 22.69 | < 186 |
| 47 | BERNHARDT 5,29-1, STATE 37-36, HULL 1-1 | 123-3833 | 415882345 | | >= 186, < 233 |
| 47 | BERHARDT 21,22,24,31-1 | 123-3833 | 415882344 | | >= 186, < 233 |
| 47 | BERNHARDT1,4,5,18,21,22,24,29,31-1,37-36HULL1-1 | 123-3833 | 415860987 | 50.97 | >= 186, < 233 |
| 48 | DOS RIOS 33-10H6 | 123-1740 | 10660000 | | >= 186, < 233 |
| 48 | ALLELY J 33-24 | 123-7435 | 415689098 | 8.24 | >= 186, < 233 |
| 49 | KAMMERZELL 6-7F,K 6-10 | 123-6487 | 11335200 | | < 186 |
| 49 | KAMMERZELL  6-8F,K 6-23 | 123-3642 | 10132500 | 12.02 | < 186 |
| 50 | GARCIA K04-30D | 123-8499 | 415771383 | | >= 186, < 233 |
| 50 | GARCIA J33-33D | 123-8536 | 415771382 | 9.41 | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 51 | CAMENISCH DOS RIOS 16-33 | 123-2487 | 415814673 | | >= 186, < 233 |
| 51 | CAMENISCH STRAIGHT 13-34B | 123-6806 | 415814676 | 4.60 | >= 186, < 233 |
| 52 | CAMENISCH STRAIGHT 13-34 | 123-2488 | 415814675 | | >= 186, < 233 |
| 52 | CAMENISCH SUPREME CAMP 4,5-3 | 123-2490 | 415814678 | 4.39 | >= 186, < 233 |
| 53 | CAMENISCH UPRR 6-3 | 123-2491 | 415814682 | | >= 186, < 233 |
| 53 | CAMENISCH UPRR 6-3BX | 123-6807 | 415814683 | | >= 186, < 233 |
| 53 | CAMENISCH SUPREME CAMP 5-3B | 123-7240 | 415814679 | 10.57 | >= 186, < 233 |
| 54 | CAMENISCH UPRR 1-3 | 123-2501 | 415814684 | | >= 186, < 233 |
| 54 | CAMENISCH UPRR 1-3B | 123-7097 | 415814685 | 2.93 | >= 186, < 233 |
| 55 | DOS RIOS 5, 6-34A | 123-8514 | 415814710 | | >= 186, < 233 |
| 55 | DOS RIOS 12-34A | 123-7098 | 415814687 | 10.39 | >= 186, < 233 |
| 56 | CAMENISCH SUPREME CAMP 7-4B | 123-7685 | 415814680 | | >= 186, < 233 |
| 56 | CAMENISCH SUPREME CAMP 2-4B | 123-7685 | 415814677 | | >= 186, < 233 |
| 56 | CAMENISCH SUPREME CAMP 8-4B | 123-7686 | 415814681 | | >= 186, < 233 |
| 56 | CAMENISCH SUPREME CAMP 2,7,8-4 | 123-2490 | 415814702 | 18.90 | >= 186, < 233 |
| 57 | CAMENISCH SUPREME CAMP 1-4 | 123-2498 | 415814690 | | >= 186, < 233 |
| 57 | CAMENISCH SUPREME CAMP 4-3B | 123-6805 | 415814703 | 3.74 | >= 186, < 233 |
| 58 | FIVE RIVERS K04-25 | 123-9681 | 415817756 | | >= 186, < 233 |
| 58 | FIVE RIVERS K09-30D | 123-9676 | 415816023 | | >= 186, < 233 |
| 58 | FIVE RIVERS K09-29D | 123-9678 | 415816249 | | >= 186, < 233 |
| 58 | FIVE RIVERS K04-20D | 123-9683 | 415819904 | | >= 186, < 233 |
| 58 | FIVE RIVERS K04-21D | 123-9684 | 415819905 | | >= 186, < 233 |
| 58 | FIVE RIVERS K04-32D | 123-9680 | 415817747 | 34.35 | >= 186, < 233 |
| 59 | LINHART J 33-3S | 123-9076 | 11342600 | | >= 186, < 233 |
| 59 | ASHTON J33-21D | 123-8805 | 415771307 | | >= 186, < 233 |
| 59 | ASHTON J33-20D | 123-8804 | 415771305 | | >= 186, < 233 |
| 59 | ASHTON J33-32D | 123-8806 | 415771309 | | >= 186, < 233 |
| 59 | ASHTON J33-19 | 123-8803 | 415771303 | | >= 186, < 233 |
| 59 | ASHTON J33-18D | 123-8807 | 415771302 | 20.19 | >= 186, < 233 |
| 60 | SPOMER 7-32 | 123-4123 | 415860818 | | >= 186, < 233 |
| 60 | SPOMER 9, 10-32 | 123-4123 | 415860860 | 11.56 | >= 186, < 233 |
| 61 | RH FARMS II33-11D | 123-9874 | 415826447 | | >= 233 |
| 61 | RH FARMS II33-25D | 123-9875 | 415826448 | | >= 233 |
| 61 | RH FARMS II33-14D | 123-9876 | 415826449 | | >= 233 |
| 61 | GUARD 1-33, RH FARMS II33-12D | 123-9859 | 10090100 | 50.18 | >= 233 |
| 62 | OPDYKE 32,42-3 | 123-6485 | 11658700 | | >= 233 |
| 62 | OPDYKE 31-3, USX I03-17 | 123-5734 | 11658600 | 7.28 | >= 233 |
| 63 | MCGLOTHLIN 17-11, 12 | 123-5918 | 415779874 | | >= 233 |
| 63 | MCGLOTHLIN 17-42 | 123-7220 | 415779788 | | >= 233 |
| 63 | ULRICH PC I17-07D, 08, 17D | 123-9921 | 415826943 | 31.19 | >= 233 |
| 64 | LINDBLAD 20-21/20-23/22-20 | 123-3088 | 415779911 | | >= 233 |
| 64 | BATES 20-22, LINDBLAD 20-25 | 123-6907 | 415779506 | 19.38 | >= 233 |
| 65 | SINJIN STATE E36-19 | 123-8576 | 415773829 | | >= 233 |
| 65 | LDS F01-30D | 123-8501 | 415771396 | | >= 233 |
| 65 | SINJIN STATE E36-20 | 123-8577 | 415774073 | | >= 233 |
| 65 | LDS E36-33 | 123-8492 | 415771084 | 41.16 | >= 233 |
| 66 | EIFERT 11-42/VANNOY 11-41 | 123-3075 | 415779999 | | >= 233 |
| 66 | EIFERT PC E11-63HN | 123-9A43 | 415833408 | | >= 233 |
| 66 | EIFERT PC E11-65HN | 123-9A1F | 415833409 | 13.50 | >= 233 |
| 67 | FEIT E 23-9,10,16 | 123-3684 | 11322400 | | < 186 |
| 67 | FEIT E23-97HZ | 123-9265 | 415810337 | 29.16 | < 186 |
| 68 | FIVE M E21-74-1HC | 123-9B23 | 415843762 | | >= 233 |
| 68 | FIVE M E21-73-1HN | 123-9B23 | 415842670 | 56.49 | >= 233 |
| 69 | BOOTH USX EE23-07P,08P | 123-8498 | 415771315 | | < 186 |
| 69 | BOOTH USX EE 23-15P,16 | 123-7249 | 415674178 | 1.79 | < 186 |
| 70 | HUNGENBERG E 28-12,13 | 123-5720 | 10790200 | | >= 233 |
| 70 | COWHERD 1,HUNGENBERG E 28-11,25 | 123-5722 | 11313600 | 7.07 | >= 233 |
| 71 | KOEHLER E 33-09D | 123-7978 | 415713890 | | >= 233 |
| 71 | KOEHLER E 33-23D | 123-7979 | 415713891 | | >= 233 |
| 71 | KOEHLER E 34-33D | 123-7981 | 415713893 | | >= 233 |
| 71 | KOEHLER E 34-32D | 123-7980 | 415713892 | 16.49 | >= 233 |
| 72 | DINNER 14-13 & 14 | 123-5224 | 415779641 | | < 186 |
| 72 | DINNER 14-15 | 123-6956 | 415779654 | 2.51 | < 186 |
| 73 | IRVINE 2-1-21 | 123-7216 | 415779556 | | >= 233 |
| 73 | IRVINE PC E02-18, 27 | 123-999D | 415828721 | | >= 233 |
| 73 | IRVINE #1; 2-11; 2-13; 2-14, 2-15 | 123-6340 | 415779888 | 41.35 | >= 233 |
| 74 | BROWN 3-13/BROWN 3-14 | 123-5222 | 415779906 | | >= 233 |
| 74 | BROWN PC E02-31D | 123-9597 | 415816241 | | >= 233 |
| 74 | BICKLING PC E02-33D | 123-9535 | 415816239 | | >= 233 |
| 74 | BICKLING PC E03-21D,22D | 123-9536 | 415816240 | | >= 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 74 | BROWN PC E02-32, E03-17 | 123-9598 | 415816242 | 55.85 | >= 233 |
| 75 | WEBER  1-26  (I 26-9) | 123-4996 | 10087000 | 1.57 | >= 233 |
| 76 | BROWN , HI 1-27, 2-27 | 123-4938 | 10090400 | | >= 233 |
| 76 | BROWN , HI 3-27 , 4-27 | 123-5304 | 10090500 | 1.23 | >= 233 |
| 77 | CARLSON 14-2,POP I 14-17 | 123-5719 | 91310800 | | >= 233 |
| 77 | CARLSON 14-1,MICHAEL I 14-2,MONTERA I 14-8 | 123-5721 | 11310800 | 6.99 | >= 233 |
| 78 | DARLING 6-27 EG,SIAN E 27-6 | 123-4809 | 11316200 | | >= 233 |
| 78 | SWANSON E27-19 | 123-9872 | 415826214 | 16.34 | >= 233 |
| 79 | FRAN E 25-4 , 5 | 123-2090 | 11323000 | | >= 186, < 233 |
| 79 | LUTZ E25-30D, 31 | 123-9881 | 415826457 | 19.17 | >= 186, < 233 |
| 80 | LDS F01-29 | 123-8493 | 415771085 | | >= 186, < 233 |
| 80 | SINJIN E 36-9,10,11,12,13,15,16,25 | 123-3616 | 11366800 | 38.18 | >= 186, < 233 |
| 81 | MONFORT E 30-22 | 123-6291 | 11715200 | | >= 233 |
| 81 | MONFORT E 30-21 | 123-6322 | 10567200 | | >= 233 |
| 81 | MONFORT E 30-15 | 123-6315 | 91552000 | | >= 233 |
| 81 | MONFORT E 30-10,23 | 123-6321 | 11552000 | | >= 233 |
| 81 | MONFORT E 31-27 | 123-6316 | 90567200 | 14.49 | >= 233 |
| 82 | MONFORT E 30-30 | 123-6704 | 70567200 | | >= 233 |
| 82 | MONFORT E 30-29 | 123-6705 | 81715200 | | >= 233 |
| 82 | MONFORT E 30-18 | 123-6701 | 91715200 | | >= 233 |
| 82 | MONFORT E 30-5,6 | 123-6702 | 80567200 | | >= 233 |
| 82 | MONFORT E 30-3,4,19 | 123-6703 | 11737200 | 24.22 | >= 233 |
| 83 | CSU E35-03D,04 | 123-8417 | 415753052 | | >= 186, < 233 |
| 83 | CSU E35-19 | 123-8336 | 415752448 | 7.76 | >= 186, < 233 |
| 84 | LDS F01-27 | 123-8438 | 415770848 | | >= 186, < 233 |
| 84 | LDS F01-28D | 123-8439 | 415770849 | 16.35 | >= 186, < 233 |
| 85 | LDS E25-33D | 123-9032 | 415807080 | | >= 186, < 233 |
| 85 | LDS E25-32 | 123-9034 | 415807488 | 12.63 | >= 186, < 233 |
| 86 | ERICKSON 21-13 | 123-5002 | 10069600 | | >= 186, < 233 |
| 86 | ADOLPH F21-25D | 123-99A0 | 415828730 | 9.07 | >= 186, < 233 |
| 87 | UPV 27- 1H6,8H6 | 123-3551 | 10825300 | | < 186 |
| 87 | UPV 27- 2H6 , 27-7H6 (J 27-6, 27-7) | 123-3596 | 10825200 | 8.34 | < 186 |
| 88 | SCHANK 2 , J 35-6 | 123-3679 | 11364200 | | >= 186, < 233 |
| 88 | SCHANK J 35-21 | 123-7064 | 415663407 | | >= 186, < 233 |
| 88 | SCHANK J 35-20 | 123-7063 | 415663406 | 12.95 | >= 186, < 233 |
| 89 | SCHANK J 35-27 | 123-7171 | 415664184 | | >= 186, < 233 |
| 89 | SCHANK J 35-1 | 123-7174 | 415664466 | | >= 186, < 233 |
| 89 | SCHANK J 36-31 | 123-7172 | 415664185 | 9.92 | >= 186, < 233 |
| 90 | ROBB PM F 15-7 | 123-3727 | 11362200 | | >= 186, < 233 |
| 90 | EMMA F15-21D | 123-8724 | 415790686 | | >= 186, < 233 |
| 90 | EMMA F15-18D | 123-8722 | 415790684 | 11.96 | >= 186, < 233 |
| 91 | UPV 23- 1H6,2H6 | 123-3745 | 10818700 | | >= 186, < 233 |
| 91 | UPRC 23- 7H6,UPV 23-8H6 | 123-3489 | 10779500 | 8.41 | >= 186, < 233 |
| 92 | LESSER J21-28D | 123-8568 | 415771458 | | >= 186, < 233 |
| 92 | LESSER PM J 21-1,2,7X,LESSOR J 21-8,17 | 123-2808 | 11341500 | 22.90 | >= 186, < 233 |
| 93 | WIEDEMAN PM J 21-09,10 | 123-3531 | 11381700 | | >= 186, < 233 |
| 93 | WIEDEMAN 21-15H6 | 123-2759 | 10140000 | 2.02 | >= 186, < 233 |
| 94 | MANTEL J 23-10,15 | 123-3662 | 11345900 | | >= 186, < 233 |
| 94 | WIEDEMAN J 23-11,14 | 123-3483 | 11381900 | 8.21 | >= 186, < 233 |
| 95 | MOSSBERG J 33-28 | 123-7432 | 415688467 | | >= 186, < 233 |
| 95 | MOSSBERG J 33-27 | 123-7432 | 415688466 | 10.56 | >= 186, < 233 |
| 96 | WIEDEMAN J28-21D | 123-8374 | 415753716 | | < 186 |
| 96 | WIEDEMAN J28-22D | 123-8482 | 415753717 | | < 186 |
| 96 | WIEDEMAN J28-18D | 123-8480 | 415753108 | 7.57 | < 186 |
| 97 | LESSER J21-27D | 123-8714 | 415771457 | | >= 186, < 233 |
| 97 | LESSER J21-18D | 123-8703 | 415768737 | 13.45 | >= 186, < 233 |
| 98 | BIERIG 1-26B | 123-6901 | 415814672 | | >= 186, < 233 |
| 98 | RHOADARMER 1-26B | 123-6698 | 415814689 | 7.82 | >= 186, < 233 |
| 99 | BIERIG 1-26, 8-26 | 123-1915 | 415814700 | | >= 186, < 233 |
| 99 | RHOADARMER 1-26, 2-26 | 123-2497 | 415814705 | 13.17 | >= 186, < 233 |
| 100 | LYSTER E26-22D | 123-9152 | 415806792 | | < 186 |
| 100 | LYSTER 4,9-26 EG, 26-10X,15, 23 | 123-1822 | 11344700 | 13.69 | < 186 |
| 101 | IRENE G30-63-1HN | 123-9B34 | 415836158 | | < 186 |
| 101 | ROY K25-64-1HN | 123-9A6F | 415836160 | | < 186 |
| 101 | SCHMIDT G30-65HN | 123-9A2D | 415836305 | | < 186 |
| 101 | IRENE G30-64-1HN | 123-9A25 | 415836304 | | < 186 |
| 101 | ROY K25-63-1HN | 123-9A2A | 415836159 | 35.95 | < 186 |
| 102 | UPRC 35- 3F,4F | 123-2205 | 10063700 | | >= 186, < 233 |
| 102 | PEAKS K26-77,78-1HN, PEPPLER K26-79-1HN | 123-9D0F | 415867886 | 47.91 | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 103 | NELSON K27-63HN | 123-9478 | 415814034 | | >= 186, < 233 |
| 103 | UPRC 27-12F,13F | 123-3697 | 10064100 | 5.32 | >= 186, < 233 |
| 104 | GEMINI K 1-9,10 | 123-1725 | 11324700 | | >= 186, < 233 |
| 104 | GEMINI G06-33 | 123-8500 | 415771384 | | >= 186, < 233 |
| 104 | GEMINI K01-99HZ | 123-8539 | 415771408 | 15.37 | >= 186, < 233 |
| 105 | TANNER K33-65HN | 123-9550 | 415815704 | | < 186 |
| 105 | TANNER K 33-11,12,14 | 123-3739 | 11374000 | 4.16 | < 186 |
| 106 | BOULTER STATE G16-75HN | 123-9B25 | 415841517 | | >= 186, < 233 |
| 106 | BOULTER STATE G21-69HN | 123-9B25 | 415843448 | 12.70 | >= 186, < 233 |
| 107 | UPRC 7-10G,15G | 123-3716 | 10076200 | | >= 186, < 233 |
| 107 | UPRC 7- 9G,16G | 123-3707 | 10063200 | 12.29 | >= 186, < 233 |
| 108 | STEWART FEDERAL G07-32D | 123-9924 | 415827087 | | >= 186, < 233 |
| 108 | STEWART 7-11G,14G, G 7-20,25 | 123-3734 | 10066900 | 18.73 | >= 186, < 233 |
| 109 | SYLVESTER G06-30D | 123-9997 | 415827088 | | >= 186, < 233 |
| 109 | SYLVESTER 1- 1I6 | 123-1852 | 10143600 | | >= 186, < 233 |
| 109 | SYLVESTER 36-9H6,16H6 | 123-2702 | 10140800 | | >= 186, < 233 |
| 109 | SYLVESTER F31-33 | 123-9999 | 415828129 | | >= 186, < 233 |
| 109 | SYLVESTER F31-20D | 123-999A | 415828130 | | >= 186, < 233 |
| 109 | SYLVESTER F31-32D | 123-9993 | 415826942 | | >= 186, < 233 |
| 109 | SYLVESTER 31-12H5 | 123-2734 | 10141300 | 40.01 | >= 186, < 233 |
| 110 | SCHANK J 35-22 | 123-7072 | 415663921 | | >= 186, < 233 |
| 110 | SCHANK J 35-7,8,17 | 123-1853 | 11457600 | 7.57 | >= 186, < 233 |
| 111 | CURTIS G 6-7,8 | 123-2136 | 11461300 | | >= 186, < 233 |
| 111 | AMBER G05-32D | 123-9A0B | 415833398 | | >= 186, < 233 |
| 111 | DEVOTIE 01-06,02-06 | 123-3658 | 11317600 | | >= 186, < 233 |
| 111 | AMBER G06-21D, 22D | 123-9A0C | 415833399 | 32.20 | >= 186, < 233 |
| 112 | JERKE G 7-22 | 123-6803 | 81319000 | | >= 186, < 233 |
| 112 | JERKE G 7-21 | 123-6801 | 11732800 | 2.76 | >= 186, < 233 |
| 113 | JERKE G 7-28 | 123-6863 | 71319000 | | >= 186, < 233 |
| 113 | JERKE G 7-18 | 123-6770 | 91319000 | | >= 186, < 233 |
| 113 | JERKE G 7-27 | 123-6802 | 61319000 | | >= 186, < 233 |
| 113 | JERKE G 7-1,17 | 123-6878 | 42566196 | 12.64 | >= 186, < 233 |
| 114 | MCCARTHY #1/MCCARTHY 6-33, 35 | 123-2949 | 415779947 | | >= 186, < 233 |
| 114 | SHAMROCK FEDERAL G07-29D | 123-99FE | 415831533 | | >= 186, < 233 |
| 114 | SHAMROCK FEDERAL PC G07-30D | 123-99FF | 415831534 | 14.02 | >= 186, < 233 |
| 115 | CONRAD FEDERAL 41-12 | 123-3139 | 415862632 | | >= 186, < 233 |
| 115 | CONRADFEDERAL24-12 | 123-3139 | 415860888 | | >= 186, < 233 |
| 115 | CONRADFEDERAL17-12 | 123-3139 | 415860760 | 13.79 | >= 186, < 233 |
| 116 | WERTZ FEDERAL 36-12 | 123-4179 | 415863056 | | >= 186, < 233 |
| 116 | WERTZ 24-12, WERTZ FEDERAL 35-12 | 123-4179 | 415860817 | 4.28 | >= 186, < 233 |
| 117 | STROMBERGER 34-12 | 123-6917 | 415860824 | | >= 186, < 233 |
| 117 | STROMBERGER 37-12 | 123-6917 | 415860524 | | >= 186, < 233 |
| 117 | STROMBERGER FEDERAL 20-12 | 123-6917 | 415860836 | 7.34 | >= 186, < 233 |
| 118 | STROMBERGER FEDERAL 23-12 | 123-4139 | 415860966 | | >= 186, < 233 |
| 118 | STROMBERGER 33-12 | 123-4139 | 415860883 | 6.24 | >= 186, < 233 |
| 119 | BLAKE MELVIN 1 | 123-3117 | 415860857 | | >= 186, < 233 |
| 119 | BLAKE 13-12, 23-12 | 123-3117 | 415861015 | 6.33 | >= 186, < 233 |
| 120 | JEPSEN 13-15F | 123-1731 | 10068300 | | >= 186, < 233 |
| 120 | JEPSEN 13-9F,13-10F | 123-5016 | 10065000 | 6.18 | >= 186, < 233 |
| 121 | AGRICULTURAL PRODUCTS 11-1F,11-2F | 123-2654 | 10066200 | | >= 186, < 233 |
| 121 | AGRICULTURAL PRODUCTS 11-7F,11-8F | 123-3586 | 10066300 | 13.87 | >= 186, < 233 |
| 122 | CARLSON 23-2F,23-7F | 123-2669 | 10064700 | | >= 186, < 233 |
| 122 | CARLSON 23-1F,23-8F | 123-2663 | 10078800 | 7.45 | >= 186, < 233 |
| 123 | EWING 31-14 | 123-3882 | 415860737 | | >= 186, < 233 |
| 123 | EWING 41-14, ROBERT FEDERAL 21-14 | 123-3882 | 415860552 | 8.08 | >= 186, < 233 |
| 124 | SCHMIDT K25-18 | 123-7731 | 415714285 | | < 186 |
| 124 | SCHMIDT 25-02F,07F, K25-17 | 123-3587 | 10059500 | 8.87 | < 186 |
| 125 | MOSIER 23-12F, 23-13F | 123-3714 | 10078200 | | < 186 |
| 125 | MOSIER 23-11F, 23-14F | 123-2720 | 10064300 | 10.86 | < 186 |
| 126 | MOSIER K23-21D | 123-9445 | 415811607 | | >= 186, < 233 |
| 126 | CARLSON K23-22D | 123-9441 | 415811354 | | >= 186, < 233 |
| 126 | SCHMIDT K23-24D | 123-9443 | 415811360 | 14.85 | >= 186, < 233 |
| 127 | MOSIER K23-33D | 123-9450 | 415812783 | | >= 186, < 233 |
| 127 | MOSIER K23-20D | 123-9588 | 415812782 | | >= 186, < 233 |
| 127 | CARLSON K23-18D | 123-9448 | 415812775 | 13.35 | >= 186, < 233 |
| 128 | MCMILLEN TRUST 19-12G,13G | 123-3759 | 10079100 | | < 186 |
| 128 | MCMILLEN TRUST 19-11G,14G | 123-3744 | 10058800 | 10.44 | < 186 |
| 129 | SCHMIDT 30- 5G,30-6G | 123-2723 | 10059200 | | >= 186, < 233 |
| 129 | SCHMIDT G30-20 | 123-8502 | 415771397 | 8.86 | >= 186, < 233 |
| 130 | SHABLE G17-23D, 24D | 123-3747 | 415842703 | | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 130 | SHABLE 17-10G,15G, 22D | 123-3747 | 10062500 | 19.64 | >= 186, < 233 |
| 131 | MCMILLEN G 19-19,20 | 123-7566 | 415690867 | | < 186 |
| 131 | MCMILLEN G 19-21 | 123-7570 | 415694144 | | < 186 |
| 131 | MCMILLEN TRUST 19-4G,19-5G | 123-3687 | 10058600 | | < 186 |
| 131 | MCMILLEN TRUST 19-3G,6G | 123-3737 | 10066800 | 22.68 | < 186 |
| 132 | SCHMIDT G30-33 | 123-8234 | 415747591 | | >= 186, < 233 |
| 132 | SCHMIDT 30-11G,12G,G 30-25 | 123-3733 | 10076300 | | >= 186, < 233 |
| 132 | SCHMIDT 30-13G,30-14G | 123-2155 | 10059400 | 22.60 | >= 186, < 233 |
| 133 | MCMILLEN TRUST 19-1G,2G | 123-3656 | 10078600 | | < 186 |
| 133 | MCMILLEN G19-27D | 123-9A61 | 415837214 | | < 186 |
| 133 | MCMILLEN G20-30D | 123-9A62 | 415837216 | 18.75 | < 186 |
| 134 | SCHMIDT G 19-22 | 123-7708 | 415704974 | | < 186 |
| 134 | SCHMIDT G 19-24 | 123-7707 | 415698957 | 5.35 | < 186 |
| 135 | TULO G30-28,29 | 123-7983 | 415714286 | | < 186 |
| 135 | SCHMIDT G30-18D,27D | 123-9AA8 | 415840092 | 21.73 | < 186 |
| 136 | OSTER G30-24 | 123-8377 | 415769362 | | < 186 |
| 136 | OSTER G30-23 | 123-8376 | 415768738 | 11.14 | < 186 |
| 137 | CRAVEN 22-17, ULRICH 33-17 | 123-3153 | 415860574 | | < 186 |
| 137 | CRAVEN 2, EVANS 11-17, MURRAY 12-17 | 123-3153 | 415860975 | 8.49 | < 186 |
| 138 | ARENS G13-28D | 123-8531 | 415771162 | | < 186 |
| 138 | ARENS, FRED 4,5 | 123-2217 | 10006300 | 12.77 | < 186 |
| 139 | BIGFOOT  1 | 123-4923 | 10009000 | | < 186 |
| 139 | BIGFOOT  2 | 123-6396 | 10009100 | 6.19 | < 186 |
| 140 | SALLEE  2 | 123-6430 | 10042800 | | < 186 |
| 140 | SALLEE  1 | 123-9092 | 10042700 | 6.54 | < 186 |
| 141 | BOULTER 14-11G , 14-14G | 123-2803 | 10061300 | | >= 186, < 233 |
| 141 | BOULTER PC G14-24 | 123-9928 | 415828485 | 12.66 | >= 186, < 233 |
| 142 | BOULTER PC G14-29D | 123-9544 | 415819897 | | >= 186, < 233 |
| 142 | BOULTER G14-19D | 123-9939 | 415829063 | | >= 186, < 233 |
| 142 | BOULTER 14-3G,14-6G | 123-3706 | 10061600 | 19.93 | >= 186, < 233 |
| 143 | BOIKO PC G15-29D | 123-9654 | 415821313 | | >= 186, < 233 |
| 143 | BOIKO PC G15-28D | 123-9733 | 415821312 | | >= 186, < 233 |
| 143 | LEE PM G 15-3,4 | 123-1775 | 11340900 | 15.47 | >= 186, < 233 |
| 144 | HOW-SAD C 18-31 | 123-7490 | 415689334 | | >= 186, < 233 |
| 144 | ROFOJONM G 13-17 | 123-7500 | 415690095 | 6.98 | >= 186, < 233 |
| 145 | BRUNTZ-BOULTER 16-1 | 123-6421 | 10011500 | | >= 186, < 233 |
| 145 | BRUNTZ G22-30D | 123-8534 | 415771318 | 14.75 | >= 186, < 233 |
| 146 | BOHLENDER 13-1 | 123-2959 | 415779541 | | >= 186, < 233 |
| 146 | FRANK 13-1, 21, 25 | 123-2956 | 415779844 | 5.28 | >= 186, < 233 |
| 147 | PLATTE VALLEY 13-24, TIMMERMAN G13-18D,20D | 123-2957 | 415779875 | | >= 186, < 233 |
| 147 | TIMMERMAN G13-32D, 33D | 123-99D4 | 415831938 | | >= 186, < 233 |
| 147 | TIMMERMAN G13-21D, 22D | 123-99D3 | 415831937 | 59.60 | >= 186, < 233 |
| 148 | TIMMERMAN 13, 14-13, WERTZ 14-13 | 123-4147 | 415863061 | | >= 186, < 233 |
| 148 | TIMMERMAN 23-13 | 123-4147 | 415863062 | 11.21 | >= 186, < 233 |
| 149 | ARENS G22-22D | 123-8559 | 415771295 | | >= 186, < 233 |
| 149 | ARENS GRANT  2,22-3 | 123-2196 | 10006600 | 9.05 | >= 186, < 233 |
| 150 | ARENS G22-18D | 123-8560 | 415771297 | | >= 186, < 233 |
| 150 | ARENS, GRANT 1,22-4,ARENS G 22-17 | 123-1825 | 10006800 | 16.28 | >= 186, < 233 |
| 151 | CHESNUT G 22-6 | 123-4985 | 10012600 | | < 186 |
| 151 | CHESNUT G 22-5 | 123-5843 | 10012500 | | < 186 |
| 151 | CHESNUT G22-21 | 123-8528 | 415771043 | | < 186 |
| 151 | CHESNUT G22-20D | 123-8527 | 415771042 | 17.52 | < 186 |
| 152 | SHELTON G 23-22 | 123-7120 | 415664253 | | >= 186, < 233 |
| 152 | ARENS 23-1G,8G, SHELTON G 23-17 | 123-2150 | 10065200 | 15.67 | >= 186, < 233 |
| 153 | SHELTON G 23-27 | 123-7637 | 415664467 | | >= 186, < 233 |
| 153 | SHELTON G 23-28 | 123-7191 | 415668561 | | >= 186, < 233 |
| 153 | ARENS 23-2G,7G | 123-4786 | 10080400 | 14.63 | >= 186, < 233 |
| 154 | OSTER G34-29 | 123-7729 | 415714282 | | >= 186, < 233 |
| 154 | OSTER 27-11G, R G 27-13 | 123-1787 | 10086000 | 6.18 | >= 186, < 233 |
| 155 | BOULTER G22-31D | 123-8938 | 415801237 | | >= 186, < 233 |
| 155 | BOULTER G22-32D | 123-8971 | 415801238 | | >= 186, < 233 |
| 155 | BOULTER 21-1 | 123-5796 | 10052200 | 18.02 | >= 186, < 233 |
| 156 | BOULTER 21-2 | 123-5291 | 10052300 | | >= 186, < 233 |
| 156 | ULRICH PC G21-28D | 123-9AAA | 415840094 | | >= 186, < 233 |
| 156 | ULRICH PC G21-17D | 123-9AA9 | 415840093 | 18.21 | >= 186, < 233 |
| 157 | SHABLE 21-20 | 123-3295 | 415861012 | | < 186 |
| 157 | HINDE 7-20, VANDLEN 2-20 | 123-3295 | 415860615 | 10.87 | < 186 |
| 158 | SCHMIDT 25- 9F,16F,K25-22D | 123-2627 | 10058900 | | < 186 |
| 158 | SCHMIDT G30-32 | 123-8246 | 415748065 | | < 186 |

Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 158 | SCHMIDT 25-10F,15F,23I6 | 123-2643 | 10075900 | 8.93 | < 186 |
| 159 | MARTINSON K25-20 | 123-7989 | 415720357 | | < 186 |
| 159 | MARTINSON K25-21 | 123-7990 | 415720358 | | < 186 |
| 159 | MARTINSON 25-3F,6F,K25-19 | 123-4883 | 10059000 | 13.54 | < 186 |
| 160 | SCHWAB 26-12F,26-13F | 123-4815 | 10062400 | | >= 186, < 233 |
| 160 | CECIL K 35-30 | 123-7129 | 415666756 | | >= 186, < 233 |
| 160 | CECIL K 35-29 | 123-7128 | 415666755 | 7.90 | >= 186, < 233 |
| 161 | SCHMIDT G30-30D | 123-8734 | 415771525 | | >= 186, < 233 |
| 161 | SCHMIDT 25- 1F,25-8F | 123-2850 | 10079700 | 5.17 | >= 186, < 233 |
| 162 | BERIG STATE K 36-28 | 123-7195 | 415669242 | | < 186 |
| 162 | BERIG STATE K 36-18 | 123-7184 | 415668546 | 7.84 | < 186 |
| 163 | SANDAU K25-24 | 123-8370 | 415753053 | | < 186 |
| 163 | SANDAU/BARTLES 25-11F,25-14 | 123-3608 | 10077700 | 2.72 | < 186 |
| 164 | KROPP5-23 | 123-3382 | 415860588 | | >= 186, < 233 |
| 164 | RUZICANO 6-23, SILBERMAN 3-23 | 123-3382 | 415860554 | 7.82 | >= 186, < 233 |
| 165 | SELLS 13-31, UPRC 31-15G | 123-3229 | 415860772 | | < 186 |
| 165 | HSR-CUTLER 14-31,HSR-METZ 13-31 | 123-3229 | 415860620 | 12.34 | < 186 |
| 166 | BREST 4-31, GARDNER 3-31A, RURAL 18-31 | 123-3209 | 415860559 | | < 186 |
| 166 | RURAL 29-31, UPRR 21 PAN AM N 1 | 123-3209 | 415800728 | 15.69 | < 186 |
| 167 | UPRC 13-13E  (G 13-13) | 123-8691 | 10079200 | | < 186 |
| 167 | STROH PC O13-79HN | 123-9B24 | 415844360 | 2.24 | < 186 |
| 168 | SEBASTYEN PC O23-63HC | 123-3475 | 415841374 | | < 186 |
| 168 | BRANDON PC O23-65HN | 123-3475 | 415841372 | | < 186 |
| 168 | UPRC 23- 5I7 , 6I7 , 12I7 , 13I7 | 123-3475 | 10659900 | 57.51 | < 186 |
| 169 | SCHAEFER PM K 16-9, WEBER K 16-23 | 123-2097 | 11363900 | | >= 186, < 233 |
| 169 | WEBER K16-22 | 123-8549 | 415771590 | | >= 186, < 233 |
| 169 | SCHAFER K15-33 | 123-8545 | 415771523 | | >= 186, < 233 |
| 169 | SCHAFER K16-64-1HN | 123-9CF7 | 415864924 | 18.76 | >= 186, < 233 |
| 170 | EHRLICH 23-11,14 | 123-2993 | 415779804 | | < 186 |
| 170 | EHRLICH PC O23-67HN | 123-9AA2 | 415839222 | | < 186 |
| 170 | EHRLICH PC O23-69HN | 123-9AA3 | 415839223 | 56.43 | < 186 |
| 171 | MONFORT 12, 13-10 | 123-2498 | 415814828 | | >= 186, < 233 |
| 171 | WESTERN PC K15-79HN | 123-9CF2 | 415867889 | 22.49 | >= 186, < 233 |
| 172 | UPRC 25-13I7, 25-14I7,JOT O 25-25 | 123-3535 | 10133200 | | < 186 |
| 172 | UPRC 25-11I7 ,  25-12I7 (25-11, 25-12) | 123-3497 | 10133600 | 11.04 | < 186 |
| 173 | ZABKA K20-18 | 123-8219 | 415746344 | | >= 186, < 233 |
| 173 | ZABKA K 21-31 | 123-7600 | 415701577 | | >= 186, < 233 |
| 173 | BIRD R K 20-7,8,ZABKA K20-17 | 123-2670 | 11474700 | 14.43 | >= 186, < 233 |
| 174 | STATE 36-3I7 | 123-2742 | 10136700 | | < 186 |
| 174 | CADE STATE O 36-19,20 | 123-5396 | 11532200 | 6.40 | < 186 |
| 175 | GREENHEAD 18-11/GREENHEAD 18-12 | 123-5218 | 415779845 | | >= 186, < 233 |
| 175 | BERNHARDT 7-31/KAMMERZELL 7-43, 44 | 123-2976 | 415779981 | 12.32 | >= 186, < 233 |
| 176 | BOOS 37-25 | 123-3302 | 415860667 | | < 186 |
| 176 | HSR-KAMMERZELL15-25,16-25 | 123-3302 | 415860771 | | < 186 |
| 176 | BOOS 20-25 | 123-3302 | 415860511 | 15.75 | < 186 |
| 177 | BERNHARDT O 13-7 | 123-4948 | 11493600 | | < 186 |
| 177 | BERNHARDT O13-18D | 123-8497 | 415771314 | 8.53 | < 186 |
| 178 | SMITS PM K 16-11,14 | 123-3634 | 11367600 | | >= 186, < 233 |
| 178 | HAREN K21-29 | 123-8019 | 415736472 | | >= 186, < 233 |
| 178 | SMITS  1,16-12I6 | 123-2128 | 10071700 | 9.81 | >= 186, < 233 |
| 179 | UPRC 9-11I6,12I6 | 123-3644 | 10101400 | | >= 186, < 233 |
| 179 | UPRC 09-03I6,14I6,FIVE RIVERS K09-19 | 123-3762 | 10101300 | 4.66 | >= 186, < 233 |
| 180 | FIVE RIVERS K15-31D | 123-9213 | 415809042 | | >= 233 |
| 180 | UPRC 9-15F,16F | 123-3689 | 10101500 | | >= 233 |
| 180 | FIVE RIVERS K15-30D | 123-9225 | 415809662 | | >= 233 |
| 180 | UPRC 9- 9F,10F,FIVE RIVERS K09-23D | 123-3723 | 10101700 | 8.99 | >= 233 |
| 181 | UPRC 17-16I6, RANGE K 17-9 | 123-1730 | 10139500 | | >= 186, < 233 |
| 181 | OWENS K 21-30D | 123-7591 | 415697707 | 5.65 | >= 186, < 233 |
| 182 | SCHAFER K 21-17 | 123-6771 | 91337800 | | >= 186, < 233 |
| 182 | KISSLER K 21-1,2 , SCHAFER K 21-7,8 | 123-2629 | 11337800 | 8.42 | >= 186, < 233 |
| 183 | KISSLER K 21-32D | 123-7595 | 415698956 | | >= 186, < 233 |
| 183 | KISSLER K 21-25 | 123-7594 | 415698955 | 10.47 | >= 186, < 233 |
| 184 | WEBER PM K 16-10 | 123-1782 | 11381100 | | >= 186, < 233 |
| 184 | WEBER K 16-24 | 123-7719 | 415713249 | 5.97 | >= 186, < 233 |
| 185 | SANDAU K 21-23 | 123-7722 | 415713686 | | >= 186, < 233 |
| 185 | SANDAU K21-24 | 123-7730 | 415714284 | 7.35 | >= 186, < 233 |
| 186 | FIVE RIVERS K16-30D | 123-9272 | 415810654 | | >= 186, < 233 |
| 186 | MONFORT GILCREST K08-08,09,10,14 | 123-7993 | 415734323 | | >= 186, < 233 |
| 186 | FIVE RIVERS K09-33D | 123-9275 | 415811351 | | >= 186, < 233 |
| 186 | FIVE RIVERS K08-23 | 123-9271 | 415810652 | | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 186 | FIVE RIVERS K08-17D | 123-9553 | 415815695 | | >= 186, < 233 |
| 186 | FIVE RIVERS K08-22D | 123-9557 | 415815096 | | >= 186, < 233 |
| 186 | FIVE RIVERS K08-24D, K17-27 | 123-9299 | 415810653 | | >= 186, < 233 |
| 186 | FIVE RIVERS K08-07D | 123-9552 | 415815694 | 39.43 | >= 186, < 233 |
| 187 | HAREN K16-21 | 123-8001 | 415736264 | | >= 186, < 233 |
| 187 | HAREN K21-28 | 123-8002 | 415736265 | 3.89 | >= 186, < 233 |
| 188 | OWENS K20-28 | 123-8005 | 415736473 | | >= 186, < 233 |
| 188 | OWENS K20-27 | 123-8003 | 415736266 | 7.80 | >= 186, < 233 |
| 189 | FIVE RIVERS USX K09-24D | 123-8233 | 415747590 | | < 186 |
| 189 | FIVE RIVERS USX K09-18D | 123-8243 | 415747949 | | < 186 |
| 189 | FIVE RIVERS USX K09-21D | 123-8232 | 415747589 | | < 186 |
| 189 | FIVE RIVERS USX K09-02D,07D | 123-8242 | 415747948 | 22.23 | < 186 |
| 190 | FIVE RIVERS K16-27D | 123-8562 | 415771356 | | < 186 |
| 190 | MONFORT GILCREST K16-01,08,FIVE RIVERS K16-17 | 123-8632 | 415734329 | 4.95 | < 186 |
| 191 | OWENS K17-15 | 123-9256 | 415809667 | | >= 186, < 233 |
| 191 | OWENS K17-23D | 123-9257 | 415809927 | 7.67 | >= 186, < 233 |
| 192 | KISSLER K21-18D | 123-9888 | 415827081 | | >= 186, < 233 |
| 192 | KISSLER K21-21D | 123-9889 | 415827083 | | >= 186, < 233 |
| 192 | KISSLER K21-20D | 123-9994 | 415827082 | 11.79 | >= 186, < 233 |
| 193 | UPRC 11- 5F,6F | 123-3647 | 10067700 | | >= 186, < 233 |
| 193 | BASEBALL K11-04X,19 | 123-7994 | 415736142 | 6.16 | >= 186, < 233 |
| 194 | MCWILLIAMS 1, 15-32, 35 | 123-2977 | 415779969 | | >= 186, < 233 |
| 194 | MCWILLIAMS 15-3-17 | 123-9027 | 415805555 | 5.06 | >= 186, < 233 |
| 195 | FIVE RIVERS USX K09-22D | 123-9255 | 415809665 | | < 186 |
| 195 | FIVE RIVERS USX K09-08D | 123-9254 | 415809663 | 11.48 | < 186 |
| 196 | WERNING 08-03B | 123-7100 | 415814698 | | >= 186, < 233 |
| 196 | WERNING 01-03 | 123-2505 | 415814693 | | >= 186, < 233 |
| 196 | WERNING 41-03B | 123-7101 | 415814699 | | >= 186, < 233 |
| 196 | WERNING 01-03B | 123-6697 | 415814694 | | >= 186, < 233 |
| 196 | WERNING 2,8,41-3 | 123-2502 | 415814707 | | >= 186, < 233 |
| 196 | WERNING 01-02B | 123-7099 | 415814692 | 25.08 | >= 186, < 233 |
| 197 | WERNING 06-02 | 123-5994 | 415814695 | | >= 186, < 233 |
| 197 | WERNING 07-02 | 123-5995 | 415814696 | | >= 186, < 233 |
| 197 | WERNING 07-02B | 123-7684 | 415814697 | 12.61 | >= 186, < 233 |
| 198 | FIVE RIVERS K03-33D | 123-9556 | 415815095 | | >= 186, < 233 |
| 198 | FIVE RIVERS K10-30D | 123-9542 | 415819893 | | >= 186, < 233 |
| 198 | FIVE RIVERS USX K09-17D | 123-9546 | 415820684 | | >= 186, < 233 |
| 198 | FIVE RIVERS USX K09-01D | 123-9543 | 415819894 | 20.55 | >= 186, < 233 |
| 199 | EDWARD 22-22 | 123-3903 | 415860575 | | >= 186, < 233 |
| 199 | FRITZLER 12-22 1 | 123-3903 | 415860911 | 3.90 | >= 186, < 233 |
| 200 | EWING 11-14, FAGERBERG 12-14 | 123-3168 | 415860697 | | >= 186, < 233 |
| 200 | MCARTHUR 1,2 | 123-3168 | 415860645 | | >= 186, < 233 |
| 200 | EWG21-14,FGRBG22-14,LOYD31-14,34-11,ROBT18,29-14 | 123-3168 | 415860644 | 19.31 | >= 186, < 233 |
| 201 | FRITZLER 32-22 | 123-5526 | 415860652 | | >= 186, < 233 |
| 201 | FRITZLER 41-22 | 123-5526 | 415860714 | | >= 186, < 233 |
| 201 | FRITZLER 24-22 | 123-5526 | 415862575 | | >= 186, < 233 |
| 201 | EILEEN 41-22 | 123-5526 | 415860499 | | >= 186, < 233 |
| 201 | FRITZLER 25-22 | 123-5526 | 415862577 | | >= 186, < 233 |
| 201 | FRITZLER 2-22, B 1 | 123-5526 | 415860783 | 27.58 | >= 186, < 233 |
| 202 | UPRC 13-11E,12E | 123-3540 | 10066000 | | < 186 |
| 202 | STROH O13-21D | 123-8169 | 415744794 | | < 186 |
| 202 | STROH O13-20 | 123-8185 | 415744793 | 12.45 | < 186 |
| 203 | WEISS 34- 4l7,6l7 | 123-3488 | 10144200 | | < 186 |
| 203 | WEISS 2,3-34 | 123-8412 | 10117700 | 16.76 | < 186 |
| 204 | GRAY O 26-4,5 | 123-3518 | 11327800 | | >= 186, < 233 |
| 204 | GRAY O 26-3,19 | 123-6264 | 11398800 | 35.60 | >= 186, < 233 |
| 205 | HANSEN BC O 1-15 | 123-3557 | 11329100 | | >= 186, < 233 |
| 205 | EHRLICH O 12-2 | 123-4383 | 11502400 | 6.95 | >= 186, < 233 |
| 206 | LHI 14-35 | 123-7541 | 415779625 | | < 186 |
| 206 | EHRLICH 14-31 | 123-2986 | 415779677 | 8.70 | < 186 |
| 207 | APOLLO 1/LHI 14-41/LHI 14-42 | 123-2988 | 415779905 | | >= 186, < 233 |
| 207 | LHI 14-11,12,14 | 123-2987 | 415779809 | 20.85 | >= 186, < 233 |
| 213 | HOP F13-25 | 123-8425 | 415769751 | | >= 186, < 233 |
| 213 | HOP/WATTER 13-13B,14B | 123-2212 | 10065400 | 16.91 | >= 186, < 233 |
| 214 | WILLIAMS F15-22D | 123-9653 | 415820529 | | >= 186, < 233 |
| 214 | WILLIAMS PM F 15-08,17D | 123-4925 | 11382200 | 16.83 | >= 186, < 233 |
| 215 | ZABKA 2-25 | 123-7608 | 415790620 | | >= 186, < 233 |
| 215 | ZABKA 2-24 | 123-7609 | 415790480 | 10.73 | >= 186, < 233 |
| 216 | GWAA 3-11, 3-12 | 123-7619 | 415779503 | | >= 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 216 | GWAA 3-13, 14, 15 | 123-9117 | 415779702 | 26.37 | >= 233 |
| 217 | DPG F 12-27X | 123-7659 | 415704972 | | >= 186, < 233 |
| 217 | LOUSTELET 1,DPG BIRD FARM F 12-1H5,DPG F12-17 | 123-4816 | 10031200 | 6.69 | >= 186, < 233 |
| 218 | DPG F 1-33 | 123-7251 | 415674181 | | >= 186, < 233 |
| 218 | DPG F 1-13 | 123-4813 | 10658300 | 10.62 | >= 186, < 233 |
| 219 | GWAA 2-31, 32 | 123-7606 | 415779552 | | >= 186, < 233 |
| 219 | GWAA 2-33, 34, 35 | 123-8873 | 415779694 | 29.47 | >= 186, < 233 |
| 220 | YAKLICH PM F 12-03 | 123-4882 | 11383600 | | < 186 |
| 220 | DPG F 12-18 | 123-7593 | 415698953 | 8.49 | < 186 |
| 221 | GWAA 2-41 | 123-7605 | 415790484 | | >= 186, < 233 |
| 221 | GWAA 2-45 | 123-7607 | 415790465 | | >= 186, < 233 |
| 221 | GWAA 2-42, 43 | 123-7604 | 415779553 | 25.19 | >= 186, < 233 |
| 222 | PUYPE B 18-17 | 123-7718 | 415713247 | | >= 186, < 233 |
| 222 | GUNTHER B 18-1 | 123-4906 | 11328400 | 9.53 | >= 186, < 233 |
| 223 | DPG F 01-24 | 123-4822 | 415688464 | | >= 186, < 233 |
| 223 | DPG F 01-25,DPG BIRD FARM 1-14H5 | 123-7427 | 415687737 | 8.66 | >= 186, < 233 |
| 224 | MAGNUSON F28-27D | 123-8487 | 415771047 | | >= 186, < 233 |
| 224 | MAGNUSON 21-10B,15B | 123-3756 | 10101800 | 16.09 | >= 186, < 233 |
| 225 | LOWER LATHAM 3- 7,8G | 123-3503 | 10104800 | | >= 186, < 233 |
| 225 | LOWER LATHAM 3-1G,2G | 123-7056 | 90104800 | 11.34 | >= 186, < 233 |
| 226 | DOLL 23-1 | 123-7746 | 415779499 | | >= 186, < 233 |
| 226 | DOLL F23-20D | 123-8535 | 415771343 | 4.56 | >= 186, < 233 |
| 227 | ATREYU F 35-33 | 123-6884 | 11748603 | | >= 186, < 233 |
| 227 | ATREYU G 3-17 | 123-6883 | 11748605 | | >= 186, < 233 |
| 227 | ATREYU G 2-30 | 123-6885 | 11748602 | | >= 186, < 233 |
| 227 | ATREYU G 3-27 | 123-6882 | 11748606 | 18.60 | >= 186, < 233 |
| 228 | FANNY B 3 | 123-4981 | 10017300 | | >= 186, < 233 |
| 228 | FANNY B 2 | 123-4977 | 10017200 | | >= 186, < 233 |
| 228 | ATREYU G 3-28 | 123-6881 | 11748607 | | >= 186, < 233 |
| 228 | ATREYU F 34-23 | 123-6886 | 11748601 | 15.86 | >= 186, < 233 |
| 229 | ATREYU F 34-24 | 123-7598 | 415701571 | | >= 186, < 233 |
| 229 | FANNY B 34-15 , LOWER LATHAM 34-16B | 123-3533 | 10104200 | | >= 186, < 233 |
| 229 | LOWER LATHAM G02-31D | 123-8157 | 415739580 | 11.46 | >= 186, < 233 |
| 230 | BACON 3 | 123-3128 | 415860509 | | >= 186, < 233 |
| 230 | BOULTER 17-34,BRANTNER 1,3 | 123-3128 | 415860613 | 12.63 | >= 186, < 233 |
| 231 | LOWER LATHAM 2-4G,35-14B | 123-3609 | 10104300 | | >= 186, < 233 |
| 231 | LOWER LATHAM 35-12B,35-13B | 123-3501 | 10139800 | 23.00 | >= 186, < 233 |
| 232 | TOOL G 2-28 | 123-7353 | 415682832 | | >= 186, < 233 |
| 232 | TOOL G 2-27 | 123-7353 | 415682831 | | >= 186, < 233 |
| 232 | TOOL G 2-29 | 123-7353 | 415682833 | | >= 186, < 233 |
| 232 | ANDERSON PC F35-23 | 123-8991 | 415806227 | | >= 186, < 233 |
| 232 | LOWER LATHAM 2-3G,35-15B | 123-1747 | 10104600 | | >= 186, < 233 |
| 232 | TOOL G 2-17,18,19 | 123-7353 | 415676697 | | >= 186, < 233 |
| 232 | TOOL F 35-24,25 | 123-7353 | 415683489 | | >= 186, < 233 |
| 232 | LOWER LATHAM 2-2G,7G | 123-7055 | 90104600 | 39.84 | >= 186, < 233 |
| 233 | STATE EHRLICH 36-25 | 123-6912 | 415790617 | | >= 186, < 233 |
| 233 | EHRLICH STATE PC F36-32D | 123-9165 | 415807957 | | >= 186, < 233 |
| 233 | EHRLICH STATE PC F36-33D | 123-9216 | 415809216 | | >= 186, < 233 |
| 233 | EHRLICH STATE PC F36-31D | 123-9196 | 415807958 | | >= 186, < 233 |
| 233 | STATE EHRLICH 36-23,32 | 123-3029 | 415779972 | 21.87 | >= 186, < 233 |
| 234 | HAMILTON F 25-20 | 123-7112 | 415663719 | | >= 186, < 233 |
| 234 | HAMILTON F 25-21 | 123-7113 | 415663888 | 7.37 | >= 186, < 233 |
| 235 | HAMILTON 25-11B,12B | 123-1829 | 10080200 | | >= 186, < 233 |
| 235 | HAMILTON F 25-33 | 123-7071 | 415663920 | 9.01 | >= 186, < 233 |
| 236 | DINNER PC G01-22 | 123-9161 | 415807832 | | < 186 |
| 236 | DINNER 01-01-19 | 123-9154 | 415807008 | | < 186 |
| 236 | DINNER 1-2, 42, 44, 45 | 123-2932 | 415779829 | | < 186 |
| 236 | DINNER 1-3, 14, 15 | 123-2936 | 415779863 | 26.47 | < 186 |
| 237 | WEIDENKELLER PC G01-29D | 123-9352 | 415810663 | | >= 186, < 233 |
| 237 | WEIDENKELLER PC G01-27D | 123-9338 | 415809668 | | >= 186, < 233 |
| 237 | WEIDENKELLER PC G01-30D | 123-9353 | 415810664 | | >= 186, < 233 |
| 237 | WEIDENKELLER PC G01-31D | 123-9340 | 415809670 | | >= 186, < 233 |
| 237 | MUIRHEAD 1-4/WEIDENKELLER 1-2 | 123-2931 | 415779951 | | >= 186, < 233 |
| 237 | WEIDENKELLER PC G01-21D | 123-9337 | 415809046 | | >= 186, < 233 |
| 237 | WEIDENKELLER PC G01-28D | 123-9339 | 415809669 | | >= 186, < 233 |
| 237 | WEIDENKELLER PC G01-20D | 123-9336 | 415809045 | 39.46 | >= 186, < 233 |
| 238 | LOWER LATHAM 2- 5G,2-6G | 123-3524 | 10104900 | | < 186 |
| 238 | USED G 02-20 | 123-7434 | 415688851 | | < 186 |
| 238 | USED G 02-25 | 123-7434 | 415688852 | | < 186 |
| 238 | USED G 02-21 | 123-7439 | 415689107 | | < 186 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 238 | LOWER LATHAM  2-12G,2-13G | 123-3552 | 10108100 | 19.55 | < 186 |
| 239 | LOWER LATHAM PC G02-22D | 123-9AA7 | 415840091 | | < 186 |
| 239 | LOWER LATHAM PC G01-32D | 123-9AA6 | 415840083 | | < 186 |
| 239 | LOWER LATHAM  2-1G,2-8G | 123-2825 | 10060000 | 19.19 | < 186 |
| 240 | WEEZER G 3-24 | 123-7397 | 415687409 | | < 186 |
| 240 | WEEZER G 2-33 | 123-9098 | 415687742 | | < 186 |
| 240 | WEEZER G 2-32 | 123-7397 | 415687407 | | < 186 |
| 240 | WEEZER G 3-21 | 123-7354 | 415676698 | | < 186 |
| 240 | WEEZER G 3-22,23 | 123-7354 | 415676699 | | < 186 |
| 240 | LOWER LATHAM  3-9G,10G,15G,16G | 123-3485 | 10108200 | 26.12 | < 186 |
| 241 | ROMERO G03-31D | 123-8715 | 415771490 | | >= 186, < 233 |
| 241 | ROMERO G03-29D | 123-8736 | 415771488 | | >= 186, < 233 |
| 241 | ROMERO G03-30D | 123-8735 | 415771489 | | >= 186, < 233 |
| 241 | ROMERO, ANGELINA 1,2 | 123-2651 | 10041600 | 12.48 | >= 186, < 233 |
| 242 | LOWER LATHAM PC G11-69HN | 123-9606 | 415819895 | | >= 186, < 233 |
| 242 | LOWER LATHAM PC G12-69HN | 123-9607 | 415819896 | 3.23 | >= 186, < 233 |
| 243 | EASTON G12-20D | 123-9362 | 415813785 | | < 186 |
| 243 | EASTON G12-32D | 123-9363 | 415813786 | 11.05 | < 186 |
| 244 | HANSCOME G11-99HZ | 123-8980 | 415803202 | | >= 186, < 233 |
| 244 | KLEIN 12- 1 | 123-2822 | 10057600 | | >= 186, < 233 |
| 244 | HANSCOME G12-31 | 123-9036 | 415807828 | 11.47 | >= 186, < 233 |
| 245 | MUIRHEAD 1-2,34, 35 | 123-2933 | 415779915 | | >= 186, < 233 |
| 245 | MUIRHEAD 1-3-23 | 123-8880 | 415790673 | 6.91 | >= 186, < 233 |
| 246 | CHUCK ARENS G 12-33 | 123-7498 | 415690093 | | < 186 |
| 246 | CALATO G 11-23 | 123-6503 | 90006200 | 3.92 | < 186 |
| 247 | HOWIE NATOR G 11-22 | 123-7507 | 415690274 | | >= 186, < 233 |
| 247 | SADIE NATOR G 11-24 | 123-7501 | 415690096 | | >= 186, < 233 |
| 247 | ARENS, FRED 3,11-9 | 123-1854 | 10006200 | 12.31 | >= 186, < 233 |
| 248 | HANSCOME  5,6 | 123-1884 | 10022500 | | < 186 |
| 248 | HBR PC G11-21D | 123-9777 | 415824087 | 17.10 | < 186 |
| 249 | HBR PC G11-32D | 123-9817 | 415820459 | | >= 186, < 233 |
| 249 | BOULTER PC G14-30D | 123-9608 | 415819898 | | >= 186, < 233 |
| 249 | BOULTER 10-41, JOHNSON 10-45 | 123-5217 | 415779924 | | >= 186, < 233 |
| 249 | ERICKSON PC G15-27D | 123-9611 | 415819903 | 25.04 | >= 186, < 233 |
| 250 | HUWA 11-1,2 | 123-2954 | 415779555 | | >= 186, < 233 |
| 250 | HUWA 11-35 | 123-5592 | 415790501 | 4.76 | >= 186, < 233 |
| 251 | BOULTER PC G14-28D | 123-9988 | 415825698 | | >= 186, < 233 |
| 251 | BOULTER PC G11-20D | 123-9991 | 415826242 | | >= 186, < 233 |
| 251 | BOULTER PC G11-33D | 123-9987 | 415825697 | 18.33 | >= 186, < 233 |
| 252 | ALEXANDER 2-10, MEAD 7-10 | 123-3181 | 415861028 | | < 186 |
| 252 | BERTLIN 1-10, MENK 8-10 | 123-3203 | 415860763 | 17.26 | < 186 |
| 253 | MERCURE G 08-31D | 123-7567 | 415690872 | | >= 186, < 233 |
| 253 | MERCURE G 08-30D | 123-7571 | 415694145 | | >= 186, < 233 |
| 253 | MCKINLEY 3, MERCURE 8-4 | 123-3607 | 10032900 | 12.66 | >= 186, < 233 |
| 254 | STROHAUER PC G04-30D | 123-9927 | 415828481 | | >= 186, < 233 |
| 254 | KNAUB 5-1, 12;STROHAUER PC G05-27D, 28D | 123-2947 | 415779738 | 17.07 | >= 186, < 233 |
| 255 | KALLAS 4-41,42 | 123-2944 | 415779777 | | >= 186, < 233 |
| 255 | KALLAS 4-45 | 123-9103 | 415790520 | 11.48 | >= 186, < 233 |
| 256 | REICHERT  9-7 | 123-1796 | 10040200 | | >= 186, < 233 |
| 256 | REICHERT  4 | 123-9004 | 10039900 | | >= 186, < 233 |
| 256 | REICHERT  9-5 | 123-6401 | 10040100 | 6.98 | >= 186, < 233 |
| 257 | SCHISSLER  4-1 | 123-4912 | 10054600 | | >= 186, < 233 |
| 257 | SCHISSLER G04-27D | 123-8574 | 415771524 | 4.05 | >= 186, < 233 |
| 258 | REICHERT  9-03,BETZ PC G09-19 | 123-9136 | 10039800 | | < 186 |
| 258 | BETZ PC G09-31D | 123-9158 | 415807829 | 15.09 | < 186 |
| 259 | GIBBS F 28-19D | 123-5403 | 11522500 | | >= 186, < 233 |
| 259 | GIBBS 2 | 123-4924 | 10020500 | | >= 186, < 233 |
| 259 | GIBBS  4 | 123-4860 | 10100400 | | >= 186, < 233 |
| 259 | GIBBS F 28-18 | 123-6840 | 11522502 | 20.84 | >= 186, < 233 |
| 260 | IKENOUYE F 28-33 | 123-7247 | 415669245 | | >= 186, < 233 |
| 260 | IKENOUYE F 29-22 | 123-7252 | 415674183 | | >= 186, < 233 |
| 260 | IKENOUYE 29-10,F 29-23 | 123-2813 | 10102300 | 12.83 | >= 186, < 233 |
| 261 | REYNOLDS  1 | 123-8925 | 10040900 | | >= 186, < 233 |
| 261 | REYNOLDS  2,28-3 | 123-2743 | 10041000 | 6.76 | >= 186, < 233 |
| 262 | ALLES 33-7H5 | 123-2826 | 10137700 | | >= 186, < 233 |
| 262 | ALLES F 33-22 | 123-7117 | 415664180 | | >= 186, < 233 |
| 262 | ALLES 3 | 123-2221 | 10004700 | 12.48 | >= 186, < 233 |
| 263 | BOSTRON  1 | 123-6439 | 10010600 | | >= 186, < 233 |
| 263 | STROHAUER F33-32D | 123-8548 | 415771537 | | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 263 | BOSTRON  2 | 123-4956 | 10010700 | | >= 186, < 233 |
| 263 | STROHAUER F32-23 | 123-9028 | 415806789 | | >= 186, < 233 |
| 263 | STROHAUER F32-21D | 123-9033 | 415807486 | | >= 186, < 233 |
| 263 | STROHAUER F32-24D | 123-9035 | 415807489 | | >= 186, < 233 |
| 263 | STROHAUER F32-22D | 123-9030 | 415807078 | | >= 186, < 233 |
| 263 | BOSTRON 32-3  STROHAUER 32-1 | 123-2191 | 10010800 | 38.75 | >= 186, < 233 |
| 264 | ALEXANDER F 33-24 | 123-7115 | 415663919 | | >= 186, < 233 |
| 264 | ALEXANDER F 33-21 | 123-7111 | 415663718 | | >= 186, < 233 |
| 264 | ALEXANDER 33-1,2 | 123-2751 | 10004300 | | >= 186, < 233 |
| 264 | ALEXANDER F 34-33 | 123-7116 | 415664179 | 17.69 | >= 186, < 233 |
| 265 | KEISER  1 | 123-9819 | 10026700 | | < 186 |
| 265 | KEISER  2 | 123-5794 | 10026800 | 6.78 | < 186 |
| 266 | SAUER 33-2 | 123-5001 | 10058000 | | >= 186, < 233 |
| 266 | SAUER G04-29D | 123-8573 | 415771497 | | >= 186, < 233 |
| 266 | SAUER F33-33 | 123-8544 | 415771494 | | >= 186, < 233 |
| 266 | SAUER F33-25 | 123-8543 | 415771493 | | >= 186, < 233 |
| 266 | SAUER G04-28D | 123-8572 | 415771496 | 17.08 | >= 186, < 233 |
| 267 | ALLES F33-28D | 123-8310 | 415751825 | | >= 186, < 233 |
| 267 | ALLES F33-29D | 123-8371 | 415753084 | 10.61 | >= 186, < 233 |
| 268 | ALLES F33-18 | 123-8373 | 415753710 | | >= 186, < 233 |
| 268 | ALLES F33-27D | 123-8419 | 415753712 | 7.83 | >= 186, < 233 |
| 269 | DICKENS F32-27D | 123-9942 | 415829092 | | >= 186, < 233 |
| 269 | DICKENS F32-28D | 123-99A3 | 415829093 | | >= 186, < 233 |
| 269 | DICKENS F32-07X,17D | 123-9941 | 415829091 | 25.50 | >= 186, < 233 |
| 270 | BETZ PC G09-23 | 123-9178 | 415809257 | | < 186 |
| 270 | BETZ 1,9- 14, 15, 44 | 123-2951 | 415779758 | 9.77 | < 186 |
| 271 | BETZ PC G10-33D | 123-9159 | 415807830 | | >= 186, < 233 |
| 271 | BETZ STATE PC G16-69HN | 123-9159 | 415846136 | 42.19 | >= 186, < 233 |
| 272 | LORENZ F23-31D | 123-9B28 | 415843760 | | >= 186, < 233 |
| 272 | LORENZ F22-68-1HN | 123-9B28 | 415840852 | | >= 186, < 233 |
| 272 | LORENZ F22-17D, 18D | 123-9B28 | 415843757 | | >= 186, < 233 |
| 272 | LORENZ F22-69HN | 123-9B28 | 415840853 | | >= 186, < 233 |
| 272 | LORENZ F22-67-1HN | 123-9B28 | 415840851 | 39.63 | >= 186, < 233 |
| 273 | THISTLE DOWN STATE PC F36-63HN | 123-9BB7 | 415844362 | | >= 186, < 233 |
| 273 | STATE FARM 36-11 | 123-9091 | 415779793 | | >= 186, < 233 |
| 273 | THISTLE DOWN STATE PC F36-65HN | 123-9BB7 | 415848582 | | >= 186, < 233 |
| 273 | THISTLE DOWN STATE PC F36-67HC | 123-9BB7 | 415848583 | 38.74 | >= 186, < 233 |
| 274 | SCHMIDT PC C 6-69HN | 123-999E | 415828724 | | >= 186, < 233 |
| 274 | SCHMIDT PC C 6-79HN | 123-9962 | 415828489 | 3.30 | >= 186, < 233 |
| 275 | QC A32-19 | 123-9297 | 415810393 | | >= 233 |
| 275 | RUBIX/JOHNSON A 32-3,4,6 | 123-1806 | 11334400 | 21.53 | >= 233 |
| 276 | LARSON  1,2 | 123-5852 | 10028900 | | >= 186, < 233 |
| 276 | LARSON A32-17 | 123-9293 | 415810110 | 15.81 | >= 186, < 233 |
| 277 | ROTH A 30-7,8 | 123-5357 | 11362500 | | >= 233 |
| 277 | ROTH A30-17 | 123-9264 | 415810036 | 10.16 | >= 233 |
| 278 | ROHR , HANNAH  1 | 123-6460 | 10041300 | | >= 233 |
| 278 | ROHR A28-25 | 123-9260 | 415810105 | 8.76 | >= 233 |
| 279 | FRANCEN 19-30 | 123-5240 | 415861642 | | >= 233 |
| 279 | FRANCEN 11-30 | 123-5240 | 415860582 | 11.36 | >= 233 |
| 280 | PETRIKIN A 34-10 | 123-5854 | 11358000 | | >= 233 |
| 280 | PETRIKIN A 34-6,11,12 | 123-4793 | 11357900 | 7.83 | >= 233 |
| 281 | WARDLAW 35-21/35-22/35-23/35-24 | 123-8876 | 415779963 | | >= 233 |
| 281 | WARDLAW 35-25 | 123-3073 | 415779539 | 6.06 | >= 233 |
| 282 | UPV 31-14G3 | 123-4921 | 10873400 | | >= 233 |
| 282 | DEVRIES USX AA 31-11 | 123-6575 | 11720300 | 3.67 | >= 233 |
| 283 | FAIRMEADOWS 3-25 G | 123-2197 | 11321100 | | >= 233 |
| 283 | LARSON A 25-10,15,23 | 123-5354 | 11339800 | 6.68 | >= 233 |
| 284 | SCHOLFIELD STATE A36-79HN | 123-9505 | 415814060 | | >= 233 |
| 284 | SCHOLFIELD STATE A36-69HN | 123-9489 | 415812989 | 30.32 | >= 233 |
| 285 | CARPIO 22/GRUEN 22/OTTINGER 22 | 123-3069 | 415779824 | | >= 233 |
| 285 | CARPIO 22-43,4-19/GRUEN 22-31,33,35 | 123-5581 | 415779985 | 28.21 | >= 233 |
| 286 | CECIL 23-13/COOPER 23-12 | 123-7223 | 415779825 | | >= 233 |
| 286 | COOPER 23-1-17 | 123-7447 | 415790459 | | >= 233 |
| 286 | COOPER 23-15, 23-1-19 | 123-7217 | 415790460 | 16.17 | >= 233 |
| 287 | HOFFNER 34,44-35 | 123-6484 | 11641800 | | >= 233 |
| 287 | HOFFNER 33,43-35 | 123-5776 | 11607400 | 13.11 | >= 233 |
| 288 | FOE A35-73HN | 123-9882 | 415826458 | | >= 233 |
| 288 | FOE B 2-2,7,FOEMEYER B 2-17 | 123-6428 | 11322700 | 4.88 | >= 233 |
| 289 | LUCCI BC B 1-3,4,5,6 | 123-3554 | 11343500 | | >= 233 |
| 289 | LUCCI BC B 1-19,B 1-20,21(20,21 gas only) | 123-4386 | 81343500 | 6.26 | >= 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 290 | THOMSON 3-12, B12-12,25 | 123-9BEC | 11374400 | 2.96 | >= 233 |
| 290 | THOMSON 4-12,B12-13,KC B 12-15 | 123-9BEC | 11374500 | | >= 233 |
| 291 | LUCCI B 1-24,25 | 123-6167 | 11713300 | | >= 233 |
| 291 | LUCCI BC B 1-11,12,13,14 | 123-4609 | 91343500 | 10.36 | >= 233 |
| 292 | TREBOR B 11-07 | 123-5802 | 11376100 | | < 186 |
| 292 | TREBOR B11-22 | 123-8495 | 415771164 | 5.58 | < 186 |
| 293 | SITZMAN 3-1 | 123-3001 | 415779538 | | >= 233 |
| 293 | ANNIE B03-23 | 123-9294 | 415810339 | 6.47 | >= 233 |
| 294 | TREBOR B11-18 | 123-8503 | 415771398 | | >= 233 |
| 294 | TREBOR B 11-3,4,19 | 123-4758 | 11376600 | | >= 233 |
| 294 | TREBOR B11-21 | 123-8505 | 415771400 | | >= 233 |
| 294 | TREBOR B 11-05,06 | 123-4992 | 11376700 | | >= 233 |
| 294 | TREBOR B11-20 | 123-8504 | 415771399 | 11.87 | >= 233 |
| 295 | TREBOR B 10-11 | 123-5363 | 11375700 | | >= 233 |
| 295 | PETERSON B10-24D | 123-9344 | 415810392 | | >= 233 |
| 295 | WACKER B10-20D | 123-9345 | 415810394 | 12.43 | >= 233 |
| 296 | LUCCI B 1-17,18,22(18,22 gas only) | 123-6422 | 11713200 | | >= 233 |
| 296 | LUCCI BC B 1-1,2,7,8 | 123-2795 | 11343400 | 8.59 | >= 233 |
| 297 | LUCCI BC B 1-9,10,15,16 | 123-3534 | 91343400 | | >= 233 |
| 297 | LUCCI B 1-23 | 123-4455 | 81343400 | 6.90 | >= 233 |
| 298 | WACKER B11-69HN | 123-9670 | 415820526 | | >= 233 |
| 298 | WACKER B01-79HN | 123-9667 | 415820528 | | >= 233 |
| 298 | WACKER B12-69HN | 123-9668 | 415820527 | 83.38 | >= 233 |
| 299 | MAX B11-64-1HN | 123-9B26 | 415841915 | | >= 233 |
| 299 | KEELY B11-63-1HN | 123-9B26 | 415841914 | 8.91 | >= 233 |
| 300 | BAKER B 2-4,5; FRITZLER B2-19 | 123-4752 | 11303700 | | >= 233 |
| 300 | COUGAR B02-67, 68, 69-1HN | 123-9D0C | 415864995 | 69.33 | >= 233 |
| 301 | LUCCI STATE B03-69HNL | 123-9BD5 | 415846932 | | >= 233 |
| 301 | LUCCI B01-99HZ | 123-8856 | 415799318 | | >= 233 |
| 301 | LUCCI STATE B01-69HNL | 123-9BD5 | 415846931 | 138.46 | >= 233 |
| 302 | SLW STATE PC BB18-67HN | 123-9A2E | 415833609 | | >= 233 |
| 302 | SLW STATE PC BB18-65HN | 123-9A1D | 415832430 | 14.03 | >= 233 |
| 303 | FERGUSON B 24-30 | 123-6844 | 11741200 | | >= 233 |
| 303 | FERGUSON B 23-2,8 | 123-6845 | 11742600 | 6.25 | >= 233 |
| 304 | PATRIOT B 16-23,25 | 123-6895 | 11557100 | | < 186 |
| 304 | PATRIOT B 16-9-16 | 123-3479 | 11357200 | 26.23 | < 186 |
| 305 | JURGENS B16-30D | 123-999F | 415828729 | | >= 186, < 233 |
| 305 | JURGENS PC B08-22D, 23, 24D | 123-9936 | 415828728 | | >= 186, < 233 |
| 305 | JURGENS 8-1,2,13,14/LOWER LATHAM 8-15 | 123-3002 | 415779890 | 70.69 | >= 186, < 233 |
| 306 | PATRIOT B 16-3,4,5,6,7,8 | 123-2628 | 11357100 | | < 186 |
| 306 | PATRIOT B 16-1,2 | 123-5496 | 11423500 | | < 186 |
| 306 | PATRIOT B 16-17,19 | 123-5398 | 11534000 | 26.94 | < 186 |
| 307 | KLEIN USX B09-14D | 123-8017 | 415736144 | | < 186 |
| 307 | KLEIN B09-13D | 123-7995 | 415736143 | 11.02 | < 186 |
| 308 | KLEIN B15-13D | 123-9491 | 415810390 | | < 186 |
| 308 | KLEIN B16-98HZ | 123-9343 | 415810391 | | < 186 |
| 308 | KLEIN B16-99HZ | 123-9378 | 415810342 | 30.26 | < 186 |
| 309 | LOUSTELET B 15-9,10,15X,16,23 | 123-1831 | 11343300 | | < 186 |
| 309 | GLOVER USX B15-02CD | 123-9016 | 415750873 | 7.13 | < 186 |
| 310 | FERGUSON 24-5H4,MONFORT 24-6H4 | 123-4760 | 10143700 | | >= 186, < 233 |
| 310 | UPRC 23- 9H4,16H4,CHEWY B 23-23 | 123-2888 | 10141900 | 24.49 | >= 186, < 233 |
| 311 | UPRC 23- 3H4,6H4 | 123-3490 | 10106000 | | >= 233 |
| 311 | CPC FERGUSON 23-1,CHEWY B 23-24 | 123-4859 | 11314400 | 5.01 | >= 233 |
| 312 | FRENZEL B 15-25 | 123-7119 | 415664182 | | >= 233 |
| 312 | FRENZEL B 15-5,6 | 123-2152 | 11470900 | 10.31 | >= 233 |
| 313 | LOLOFF B 35-29 | 123-6672 | 11735200 | | >= 233 |
| 313 | STROH 35-4 | 123-4773 | 10108700 | 11.30 | >= 233 |
| 314 | LOLOFF 2,3,B 35-19 | 123-5814 | 10030900 | | >= 186, < 233 |
| 314 | LOLOFF B 26-14X,25 | 123-6504 | 90030900 | 5.95 | >= 186, < 233 |
| 315 | CHEWY B 23-25 | 123-6711 | 11738300 | | >= 186, < 233 |
| 315 | UPRC 23-10H4,11H4,14A,15H4 | 123-1742 | 10079300 | 12.58 | >= 186, < 233 |
| 316 | HELDT B 29-20 | 123-7375 | 415682826 | | >= 186, < 233 |
| 316 | HELDT B 29-32 | 123-7372 | 415682145 | | >= 186, < 233 |
| 316 | FAIRBANKS B 29-31 | 123-7374 | 415682824 | | >= 186, < 233 |
| 316 | HELDT B 29-21 | 123-7394 | 415687075 | | >= 186, < 233 |
| 316 | GEMINI B 29-5,6,19 | 123-3599 | 11325000 | 32.47 | >= 186, < 233 |
| 317 | CONAGRA B 30-27 | 123-7387 | 415688446 | | < 186 |
| 317 | CONAGRA B 29-30 | 123-7385 | 415686443 | | < 186 |
| 317 | MENONI B 30-1,8,17 | 123-2116 | 91349000 | 17.19 | < 186 |
| 318 | YBARRA B 29-29 | 123-7265 | 415674270 | | >= 186, < 233 |

## Appendix A - Tank Systems Subject to Consent Decree

| Tank System Number | AIRS Tank | AIRS-ID | API Number | Tank System Actual Uncontrolled VOC Emissions (tpy) | Line Pressure Grouping |
|---|---|---|---|---|---|
| 318 | YBARRA B 29-18 | 123-7267 | 415674392 | | >= 186, < 233 |
| 318 | GEMINI B 29-3 | 123-3664 | 11324800 | 13.59 | >= 186, < 233 |
| 319 | CONAGRA B 29-33 | 123-3672 | 415676548 | | >= 186, < 233 |
| 319 | MENONI B 30-16 | 123-3672 | 11349100 | 7.06 | >= 186, < 233 |
| 320 | THISTLE DOWN B 31-30D | 123-7599 | 415701576 | | >= 186, < 233 |
| 320 | THISTLE DOWN B31-31D | 123-8537 | 415771401 | | >= 186, < 233 |
| 320 | GEMINI B 31-3,4,5,6,19 | 123-2678 | 11325100 | 18.42 | >= 186, < 233 |
| 321 | CONAGRA B30-21 | 123-8160 | 415742624 | | >= 186, < 233 |
| 321 | CONAGRA B30-22 | 123-6032 | 415741768 | | >= 186, < 233 |
| 321 | CONAGRA B 30-18 | 123-7386 | 415686445 | | >= 186, < 233 |
| 321 | CONAGRA B30-24 | 123-8035 | 415742480 | 13.38 | >= 186, < 233 |
| 322 | MENONI B 30-10,15 | 123-3704 | 11349000 | | >= 186, < 233 |
| 322 | CONAGRA B 30-23 | 123-7391 | 415687072 | 12.16 | >= 186, < 233 |
| 323 | SCHMIER B32-31D | 123-8024 | 415738974 | | >= 186, < 233 |
| 323 | SCHMIER B32-30D | 123-8020 | 415736474 | | >= 186, < 233 |
| 323 | SCHMIER B32-32 | 123-8006 | 415736475 | | >= 186, < 233 |
| 323 | SCHMIER 32-4A,32-5A,THOR B 32-19 | 123-4864 | 10059800 | 27.94 | >= 186, < 233 |
| 324 | BELL B 29-22D | 123-7842 | 415698949 | | >= 186, < 233 |
| 324 | BELL B 29-24D | 123-7643 | 415698950 | 8.62 | >= 186, < 233 |
| 325 | THISTLE DOWN B31-20D | 123-8541 | 415771412 | | >= 186, < 233 |
| 325 | THISTLE DOWN B31-18D | 123-8540 | 415771411 | | >= 186, < 233 |
| 325 | THISTLE DOWN B31-22D | 123-8563 | 415771413 | 25.44 | >= 186, < 233 |
| 326 | THISTLE DOWN B31-21 | 123-7997 | 415736147 | | >= 186, < 233 |
| 326 | THISTLE DOWN B31-24 | 123-7998 | 415736148 | | >= 186, < 233 |
| 326 | THISTLE DOWN B 31-28D | 123-7596 | 415698958 | | >= 186, < 233 |
| 326 | THISTLE DOWN B31-32D | 123-8195 | 415746174 | 19.43 | >= 186, < 233 |
| 327 | P-A 12-30 | 123-4838 | 10037000 | | < 186 |
| 327 | CONAGRA B30-32D | 123-8155 | 415743918 | | < 186 |
| 327 | CONAGRA B30-31D | 123-8213 | 415742625 | 3.38 | < 186 |
| 328 | 70 RANCH USX BB25-04 | 123-8867 | 415745283 | | >= 233 |
| 328 | 70 RANCH USX BB25-68HN | 123-9980 | 415829902 | | >= 233 |
| 328 | 70 RANCH USX BB25-96-1HN | 123-9961 | 415829903 | | >= 233 |
| 328 | 70 RANCH USX BB25-99HZ | 123-8869 | 415771293 | 33.36 | >= 233 |
| 329 | 70 RANCH BB21-67HN | 123-9621 | 415815502 | | >= 233 |
| 329 | 70 RANCH BB21-65HN | 123-9589 | 415815501 | | >= 233 |
| 329 | 70 RANCH BB21-63HN | 123-9594 | 415816238 | 7.87 | >= 233 |
| 330 | 70 RANCH 11,22-9 | 123-6267 | 11716000 | | >= 233 |
| 330 | 70 RANCH BB09-99HZ | 123-8420 | 415768721 | 14.37 | >= 233 |
| 331 | 70 RANCH 44-9, 70 RANCH USX BB 09-15 | 123-6271 | 81716000 | | >= 233 |
| 331 | 70 RANCH USX BB09-63HN | 123-9496 | 415815500 | 26.11 | >= 233 |
| 332 | WELLS RANCH USX BB15-67HN | 123-9430 | 415811966 | | >= 233 |
| 332 | WELLS RANCH USX BB15-65HN | 123-9359 | 415811561 | 27.29 | >= 233 |
| 333 | WELLS RANCH USX BB 11-02,08 | 123-7327 | 415675590 | | >= 233 |
| 333 | WELLS RANCH USX BB 11-01,07,17 | 123-6709 | 91739800 | 23.15 | >= 233 |
| 334 | WELLS RANCH USX BB 11-10,16 | 123-7328 | 415675591 | | >= 233 |
| 334 | WELLS RANCH USX BB 11-09,15,23 | 123-6759 | 11739000 | 14.61 | >= 233 |
| 335 | WELLS RANCH AF06-04,05 | 123-8170 | 415744796 | | >= 233 |
| 335 | WELLS RANCH AF06-03,06 | 123-8186 | 415744795 | 4.28 | >= 233 |
| 336 | WELLS RANCH AF06-01,02 | 123-8235 | 415747593 | | >= 233 |
| 336 | WELLS RANCH AF06-07,08 | 123-8236 | 415747594 | 7.06 | >= 233 |
| 337 | WELLS RANCH AF06-11, 12 | 123-8717 | 415771595 | | >= 233 |
| 337 | WELLS RANCH AF06-13, 14 | 123-8718 | 415771596 | 15.98 | >= 233 |
| 338 | WELLS RANCH AF06-15, 16 | 123-8719 | 415771597 | | >= 233 |
| 338 | WELLS RANCH AF06-09, 10 | 123-8716 | 415771594 | 9.60 | >= 233 |
| 339 | WELLS RANCH USX AE 31-04,06 | 123-7331 | 415675649 | | >= 233 |
| 339 | WELLS RANCH USX AE31-03P,05P | 123-8827 | 415798285 | | >= 233 |
| 339 | WELLS RANCH USX AE31-99HZ | 123-8956 | 415801720 | 26.69 | >= 233 |
| 340 | WELLS RANCH USX AE31-07P | 123-8828 | 415798286 | | >= 233 |
| 340 | WELLS RANCH USX AE31-01P, 02P | 123-8800 | 415771603 | 11.30 | >= 233 |
| 341 | WELLS RANCH USX AE31-09P, 10P | 123-8787 | 415798287 | | >= 233 |
| 341 | WELLS RANCH USX AE31-98HZ | 123-8946 | 415803918 | | >= 233 |
| 341 | WELLS RANCH USX AE31-15P, 16P | 123-8801 | 415771604 | 23.91 | >= 233 |
| 342 | WELLS RANCH AE32-03, 04 | 123-8798 | 415771592 | | >= 233 |
| 342 | WELLS RANCH AE32-05, 06 | 123-8799 | 415771593 | 10.80 | >= 233 |
| 343 | WELLS RANCH AF05-62-1HN | 123-99A9 | 415831911 | | >= 233 |
| 343 | WELLS RANCH AF08-69-1HN | 123-9A30 | 415830819 | 31.05 | >= 233 |
| 344 | WELLS RANCH AE30-68HN | 123-9495 | 415811967 | | >= 233 |
| 344 | WELLS RANCH USX AE29-68HN | 123-9391 | 415811965 | 38.86 | >= 233 |
| 345 | WELLS RANCH USX AA 31-01 | 123-7585 | 415697434 | | >= 233 |
| 345 | WELLS RANCH 42-31 | 123-6082 | 11679500 | 12.16 | >= 233 |

13 of 50